**UNITED STATES DISTRICT COURT**
**NORTSHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JARROD HORTON, as Brother, Next Friend, and Special Representative of the estate of MARLON HORTON, Deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| CITY OF CHICAGO, municipal corporation, TWO UNKNOWN CHICAGO POLICE OFFICERS, CHICAGO HOUSING AUTHORITY, and TWO UNKNOWN CHICAGO HOUSING AUTHORITY SECURITY GUARDS, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

Now comes Plaintiff, JARROD HORTON, as Brother, Next Friend, and Special

Administrator of the estate of MARLON HORTON, deceased, ("Plaintiff"), by and

through one of his attorneys, Jeffrey B. Granich, and makes the following

complaint against CITY OF CHICAGO, municipal corporation, TWO UNKNOWN

CHICAGO POLICE OFFICERS ("Defendant Officers"), CHICAGO HOUSING

AUTHORITY, and TWO UNKNOWN CHICAGO HOUSING AUTHORITY

SECURITY GUARDS ("Defendant CHA Security Guards"):

## JURISDICTION and VENUE

1.   This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution and Illinois State law.

2.   This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3.   Venue is proper under 28 U.S.C. § 1391(b).  All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

4.   At the time of his death, MARLON HORTON was a 28-year-old African-American man.  At all times relevant hereto, MARLON HORTON was a citizen of the United States and a resident of the City of Chicago, Illinois.

5.   Plaintiff JARROD HORTON is the brother of decedent MARLON HORTON and brings this action on his behalf and on his own behalf as the Administrator, brother, next friend, and Special Representative of the decedent's estate.

6.   At all relevant times, Defendant OFFICERS were acting under color of state law and within the scope of his employment with Defendant CITY of CHICAGO.

7.   Defendant CITY OF CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois, and was at all relevant times, the employer and principal of the Defendant OFFICERS.

8.   At all times relevant hereto, DEFENDANT CHA SECURITY GUARDS were acting under color of state law and within in the scope of their employment with Defendant CHICAGO HOUSING AUTHORITY.

9.   Defendant CHICAGO HOUSING AUTHORITY is an a lawfully operating agency of the City of Chicago and is, or was at all relevant times, the employer and principal of the DEFENDANT CHA SECURITY GUARDS.

## FACTUAL ALLEGATIONS

2

10.     On or about September 7, 2013, decedent MARLON HORTON was inside a CHICAGO HOUSING AUTHORITY residential building located at 1815 W. Monroe St., in Chicago, Cook County, Illinois.

11.     At this time, decedent MARLON HORTON was asked to leave the building by Defendant CHA SECURITY GUARDS and/or Defendant OFFICERS.

12.     As requested, Decedent MARLON HORTON, left the residence of 1815 W. Monroe St., Chicago, Illinois.

13.     At this time, Defendant OFFICERS and/or Defendant CHA SECURITY GUARDS unlawfully detained, seized, and arrested Decedent MARLON HORTON without an arrest warrant, without a search warrant, without exigent circumstances, without reasonable suspicion, without consent, and without probable cause to believe that Decedent MARLON HORTON was committing or had committed a crime.

14.     At all times relevant hereto, Decedent MARLON HORTON was acting fully in conformity with all laws, statutes, and ordinances of the United States, the State of Illinois, and the CITY OF CHICAGO.

15.     Defendant OFFICERS and/or Defendant CHA SECURITY GUARDS proceeded to shoot Decedent MARLON HORTON, causing him severe pain, suffering, and death.


### Count I – 42 U.S.C. § 1983 False Arrest

16.     Plaintiff re-alleges paragraphs 1 through 15 as if fully repleaded herein.

17.     On September 7, 2013, Decedent MARLON HORTON was seized and arrested without a warrant and without probable cause. This seizure and arrest were in violation of Decedent MARLON HORTON'S rights secured under the Fourth and Fourteenth Amendments of the Constitution of the United States.

18.     Defendant OFFICERS and/or Defendant CHA SECURITY GUARDS unlawfully and maliciously arrested Decedent MARLON HORTON and wrongfully detained and searched him without any legal right to do so, in their official capacity as peace officers, under color of state law, and acting within the scope of their employment.

19.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.    As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

b.    As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Decedent Marlon Horton; specifically, Chicago Police officers accused of misconduct are aware that the Office of Professional Standards will not fully investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing;

c.    As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d.    Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

e.    The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.    As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g.    As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Office of Professional Standards is forbidden by

the City from considering those allegations if they are deemed "unsustained"; and,

h.    The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights.

20.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Housing Authority in that:

a.    As a matter of both policy and practice, the Chicago Housing Authority directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its guards/employees, and its failure to do so constitutes deliberate indifference;

b.    As a matter of both policy and practice, the Chicago Housing Authority facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading security guards/employees to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Decedent Marlon Horton;

c.    As a matter of widespread practice so prevalent as to comprise policy, security guards/employees of the Chicago Housing Authority abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Housing Authority fails to adequately punish and discipline instances of similar misconduct;

d.    Policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Housing Authority, by which security guards/employees fail to report misconduct committed by other security guards/employees, such as the misconduct at issue in this case;

e.    The Chicago Housing Authority and City of Chicago have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.    As a matter of express policy, the City of Chicago and Chicago Housing Authority do not retain any records which are more than five years old documenting allegations of misconduct against

5

security guards/employees, thereby preventing the City of Chicago and/or Chicago Housing Authority from ascertaining any patterns of abuse which might develop over the course of a security guard/employee's career;

g.      As a matter of express policy, the City of Chicago and/or Chicago Housing Authority refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint.

21.     The acts committed by Defendant OFFICERS and/or Defendant CHA SECURITY GUARDS were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Decedent MARLON HORTON's constitutional rights and would cause harm to him.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in a fair and just amount sufficient to compensate Decedent MARLON HORTON for the injuries he suffered, plus, Plaintiff seeks a substantial sum in punitive damages against Defendant OFFICERS and Defendant CHA SECURITY GUARDS, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

## Count II – 42 U.S.C. § 1983 – Excessive Force

22.     Plaintiff re-alleges paragraphs 1 through 15 as if fully repleaded herein.

23.     On September 7, 2013, Defendant OFFICERS and/or Defendant SECURITY GUARDS subjected Decedent MARLON HORTON to excessive force.

24.     The misconduct as described in the preceding paragraphs was objectively unreasonable and was undertaken intentionally, maliciously, willfully and with reckless indifference to Decedent MARLON HORTON's constitutional rights.

25.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.      As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

6

b.      As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Decedent Marlon Horton; specifically, Chicago Police officers accused of misconduct are aware that the Office of Professional Standards will not fully investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing;

c.      As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d.      Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

e.      The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.      As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g.      As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Office of Professional Standards is forbidden by the City from considering those allegations if they are deemed "unsustained"; and,

h.      The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the

7

complaints brought against Police Officers for violations of civil rights.

26.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Housing Authority in that:

a.     As a matter of both policy and practice, the Chicago Housing Authority directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its guards/employees, and its failure to do so constitutes deliberate indifference;

b.     As a matter of both policy and practice, the Chicago Housing Authority facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading security guards/employees to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Decedent Marlon Horton;

c.     As a matter of widespread practice so prevalent as to comprise policy, security guards/employees of the Chicago Housing Authority abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Housing Authority fails to adequately punish and discipline instances of similar misconduct;

d.     Policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Housing Authority, by which security guards/employees fail to report misconduct committed by other security guards/employees, such as the misconduct at issue in this case;

e.     The Chicago Housing Authority and City of Chicago have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.     As a matter of express policy, the City of Chicago and Chicago Housing Authority do not retain any records which are more than five years old documenting allegations of misconduct against security guards/employees, thereby preventing the City of Chicago and/or Chicago Housing Authority from ascertaining any patterns of abuse which might develop over the course of a security guard/employee's career;

      g.     As a matter of express policy, the City of Chicago and/or Chicago Housing Authority refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint.

27.     As a result of the unjustified and excessive use of force, Decedent MARLON HORTON suffered severe injuries, as well as severe conscious pain and suffering, and emotional distress.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in a fair and just amount sufficient to compensate Decedent MARLON HORTON for the injuries he suffered, plus, Plaintiff seeks a substantial sum in punitive damages against Defendant OFFICERS and Defendant CHA SECURITY GUARDS, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

## Count III – 42 U.S.C. § 1983 – Excessive Force

28.     Plaintiff re-alleges paragraphs 1 through 15 as if fully repleaded herein.

29.     On September 7, 2013, Defendant OFFICERS and/or Defendant SECURITY GUARDS subjected Decedent MARLON HORTON to excessive force.

30.     The misconduct as described in the preceding paragraphs was objectively unreasonable and was undertaken intentionally, maliciously, willfully and with reckless indifference to Plaintiff's constitutional rights.

31.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

      a.     As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

      b.     As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Decedent Marlon Horton; specifically, Chicago Police officers accused of misconduct are aware that the Office of Professional Standards

will not fully investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing;

c.  As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d.  Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

e.  The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.  As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g.  As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Office of Professional Standards is forbidden by the City from considering those allegations if they are deemed "unsustained"; and,

h.  The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights.

32.  The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Housing Authority in that:

a.  As a matter of both policy and practice, the Chicago Housing

Authority directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its guards/employees, and its failure to do so constitutes deliberate indifference;

b.     As a matter of both policy and practice, the Chicago Housing Authority facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading security guards/employees to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Decedent Marlon Horton;

c.     As a matter of widespread practice so prevalent as to comprise policy, security guards/employees of the Chicago Housing Authority abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Housing Authority fails to adequately punish and discipline instances of similar misconduct;

d.     Policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Housing Authority, by which security guards/employees fail to report misconduct committed by other security guards/employees, such as the misconduct at issue in this case;

e.     The Chicago Housing Authority and City of Chicago have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.     As a matter of express policy, the City of Chicago and Chicago Housing Authority do not retain any records which are more than five years old documenting allegations of misconduct against security guards/employees, thereby preventing the City of Chicago and/or Chicago Housing Authority from ascertaining any patterns of abuse which might develop over the course of a security guard/employee's career;

g.     As a matter of express policy, the City of Chicago and/or Chicago Housing Authority refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint.

h.  As a result of the unjustified and excessive use of force, Decedent MARLON HORTON suffered loss of life.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in a fair and just amount sufficient to compensate Decedent MARLON HORTON for the injuries he suffered, plus, Plaintiff seeks a substantial sum in punitive damages against Defendant OFFICERS and Defendant CHA SECURITY GUARDS, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.


### Count IV – 42 U.S.C. § 1983 – Failure to Intervene

33.  Plaintiff re-alleges paragraphs 1 through 15 as if fully repleaded herein.

34.  During the constitutional violations as described above, one or more of the Defendant OFFICERS and/or Defendant SECURITY GUARDS stood by without intervening to prevent the misconduct.

35.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Decedent MARLON HORTON's constitutional rights.

36.  The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.  As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

b.  As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Decedent Marlon Horton; specifically, Chicago Police officers accused of misconduct are aware that the Office of Professional Standards will not fully investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing;

c. As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

e. The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f. As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Office of Professional Standards is forbidden by the City from considering those allegations if they are deemed "unsustained"; and,

h. The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights.

37. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Housing Authority in that:

a. As a matter of both policy and practice, the Chicago Housing Authority directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its guards/employees, and its failure to do so constitutes deliberate indifference;

b.    As a matter of both policy and practice, the Chicago Housing Authority facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading security guards/employees to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Decedent Marlon Horton;

c.    As a matter of widespread practice so prevalent as to comprise policy, security guards/employees of the Chicago Housing Authority abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Housing Authority fails to adequately punish and discipline instances of similar misconduct;

d.    Policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Housing Authority, by which security guards/employees fail to report misconduct committed by other security guards/employees, such as the misconduct at issue in this case;

e.    The Chicago Housing Authority and City of Chicago have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.    As a matter of express policy, the City of Chicago and Chicago Housing Authority do not retain any records which are more than five years old documenting allegations of misconduct against security guards/employees, thereby preventing the City of Chicago and/or Chicago Housing Authority from ascertaining any patterns of abuse which might develop over the course of a security guard/employee's career;

g.    As a matter of express policy, the City of Chicago and/or Chicago Housing Authority refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint.

38.    As a result of this failure to intervene to prevent the violation of Decedent MARLON HORTON's constitutional rights, Decedent MARLON HORTON suffered pain and injury, emotional distress, and death. These Defendant OFFICERS and/or Defendant SECURITY GUARDS had a reasonable opportunity to prevent this harm, but failed to do so.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in a fair and just amount sufficient to compensate Decedent MARLON HORTON for the injuries he suffered, plus, Plaintiff seeks a substantial sum in punitive damages against Defendant OFFICERS and Defendant CHA SECURITY GUARDS, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

### Count V – 42 U.S.C. § 1983 Conspiracy

39.     Plaintiff re-alleges paragraphs 1 through 15 as if fully repleaded herein.

40.     Defendant OFFICERS and/or Defendant SECURITY GUARDS reached an understanding, engaged in a sequence of events or course of conduct and otherwise agreed and conspired together to violate the constitutional rights of Decedent MARLON HORTON.

41.     Each Defendant OFFICERS and/or Defendant SECURITY GUARDS did reach this understanding and agreement and did engage in this course of conduct with the mutual purpose, objective and knowledge that it would deprive Decedent MARLON HORTON of his right of due process, as guaranteed by the constitution.

42.     Additionally, said conspiracy and joint action violated Decedent MARLON HORTON's 14th  Amendment rights, under color of law, in contravention of 42 U.S.C. §  1983.

43.     Acting in furtherance of this plan and conspiracy, Defendants did commit overt acts, including the illegal seizure, detention, and use of excessive force against Decedent MARLON HORTON on September 7, 2013, as more fully alleged in the preceding paragraphs.

44.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

       a.     As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

       b.     As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to

believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Decedent Marlon Horton; specifically, Chicago Police officers accused of misconduct are aware that the Office of Professional Standards will not fully investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing;

c.    As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d.    Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

e.    The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.    As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g.    As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Office of Professional Standards is forbidden by the City from considering those allegations if they are deemed "unsustained"; and,

h.    The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights.

45.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Housing Authority in that:

a.      As a matter of both policy and practice, the Chicago Housing Authority directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its guards/employees, and its failure to do so constitutes deliberate indifference;

b.      As a matter of both policy and practice, the Chicago Housing Authority facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading security guards/employees to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Decedent Marlon Horton;

c.      As a matter of widespread practice so prevalent as to comprise policy, security guards/employees of the Chicago Housing Authority abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Housing Authority fails to adequately punish and discipline instances of similar misconduct;

d.      Policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Housing Authority, by which security guards/employees fail to report misconduct committed by other security guards/employees, such as the misconduct at issue in this case;

e.      The Chicago Housing Authority and City of Chicago have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.      As a matter of express policy, the City of Chicago and Chicago Housing Authority do not retain any records which are more than five years old documenting allegations of misconduct against security guards/employees, thereby preventing the City of Chicago and/or Chicago Housing Authority from ascertaining any patterns of abuse which might develop over the course of a security guard/employee's career;

g.      As a matter of express policy, the City of Chicago and/or Chicago

Housing Authority refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint.

46.     This course of conduct by Defendant OFFICERS and/or Defendant SECURITY GUARDS described in this count was done willfully, maliciously, intentionally, or with reckless disregard and gross negligence, and directly and proximately caused injury and harm to Decedent MARLON HORTON.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in a fair and just amount sufficient to compensate Decedent MARLON HORTON for the injuries he suffered, plus, Plaintiff seeks a substantial sum in punitive damages against Defendant OFFICERS and Defendant CHA SECURITY GUARDS, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

## Count VI: State Law Claim
### Intentional Infliction of Emotional Distress

47.     Plaintiff re-alleges paragraphs 1 through 15 as if fully repleaded herein.

48.     By falsely arresting Decedent MARLON HORTON  and using excessive force against him, Defendant OFFICERS and/or Defendant SECURITY GUARDS' conduct was extreme and/or outrageous; and caused decedent MARLON HORTON to suffer severe emotional distress before his death.

49.     Defendant OFFICERS and/or Defendant SECURITY GUARDS knew or should have known that their extreme and/or outrageous conduct would cause decedent MARLON HORTON to suffer severe emotional distress, and in fact, their extreme and/or outrageous misconduct, did cause him to suffer severe emotional distress until he died.

50.     As a direct and proximate result of Defendants' acts or omissions decedent MARLON HORTON suffered severe emotional distress and suffering prior to his death.

51.     Illinois law provides that public entities, such as Defendant CITY OF CHICAGO and/or CHICAGO HOUSING AUTHORITY, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

52.     At all relevant times, Defendant OFFICERS were agents of Defendant CITY OF CHICAGO and employees of the Chicago Police Department acting within the scope of their employment.

53.     At all relevant times, Defendant SECURITY GUARDS were agents of Defendant CHICAGO HOUSING AUTHORITY and employees of the Chicago Housing Authority acting within the scope of their employment.

54.     Defendants CITY OF CHICAGO, therefore, are liable as principal for all torts committed by its agents, Defendant OFFICERS.

55.     Defendant CHICAGO HOUSING AUTHORITY, therefore, is liable as principal for all torts committed by its agents, Defendants SECURITY GUARDS.

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and just amount sufficient to compensate Decedent MARLON HORTON for the injuries he suffered, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

## Count VII: Illinois Wrongful Death Act Claim

56.     Plaintiff re-alleges paragraphs 1 through 15 as if fully repleaded herein.

57.     At all relevant times, Defendant OFFICERS and Defendant SECURITY GUARDS owed decedent MARLON HORTON a duty to refrain from wanton and willful acts and omissions which could cause him harm.

58.     Defendant OFFICERS and/or Defendant SECURITY GUARDS breached their duty to decedent MARLON HORTON by willfully and wantonly using excessive and deadly force against him.

59.     Defendant OFFICERS and/or Defendant SECURITY GUARDS' acts and/or omissions, as more fully alleged above, constituted utter indifference or conscious disregard for the health and safety of decedent MARLON HORTON.

60.     As a direct and proximate result of the willful and wanton acts and/or omissions, the decedent, MARLON HORTON died on September 7, 2013.

61.     Decedent MARLON HORTON, is survived by his heirs TRAYVON HOLCOMB, ANAYA HOLCOMB, and MARIEL HORTON.

62.     By reason of the death of decedent, decedents heirs have suffered pecuniary damages, including the loss of support, comfort, love, affection, protection and society of the decedent.

63.     Illinois law provides that public entities such as Defendant CITY OF CHICAGO and/or CHICAGO HOUSING AUTHORITY are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

64.     At all relevant times, Defendant OFFICERS were agents of Defendant CITY OF CHICAGO and employees of the Chicago Police Department acting within the scope of their employment.  Defendant CITY OF CHICAGO, therefore, is liable as principal for all torts committed by its agents, Defendant OFFICERS.

65.     At all relevant times, Defendant SECURITY GUARDS were agents of Defendant CHICAGO HOUSING AUTHORITY and employees of the Chicago Housing Authority acting within the scope of their employment. Defendant CHICAGO HOUSING AUTHORITY, therefore, is liable as principal for all torts committed by its agents, Defendant SECURITY GUARDS.

        WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and just amount sufficient to compensate him for his injuries, plus Plaintiff seeks a substantial sum in punitive damages against Defendant OFFICERS and/or Defendant CHA SECURITY GUARDS, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

                                        JARROD HORTON
                                        Plaintiff,


                                        By:__/s/Jeffrey B. Granich__
                                            Jeffrey B. Granich
                                            Attorney for Plaintiff

JEFFREY B. GRANICH
Law Offices of Jeffrey B. Granich
53 W. Jackson Blvd.
Suite 840
Chicago, IL 60604
(312) 939-9009
A.R.D.C. No. 6207030


KATIE Z. EHRMIN
Law Offices of Jeffrey B. Granich
53 W. Jackson Blvd.
Suite 840
Chicago, IL 60604
(312) 939-9009
A.R.D.C. No. 6292120