IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JARROD HORTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13-cv-06865 |
| v. ) | |
| ) | Robert M. Dow, Jr. |
| CITY OF CHICAGO, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jarrod Horton filed this complaint against Defendants Kenneth Walker, Shaquila Moore, the City of Chicago, the Chicago Housing Authority ("CHA"), Maverick Security, Inc., and H.J. Russell & Company for violations of 42 U.S.C. § 1983, battery, wrongful death, and intentional infliction of emotional distress in connection with the alleged arrest and fatal shooting of his brother Marlon Horton by Walker and Moore. Before the Court are H.J. Russell's, Maverick's and Shaquila Moore's motions to dismiss [56, 57, 69, respectively]. For the reasons stated below, the Court denies Defendants' motions and grants Plaintiff leave to amend his complaint based on his appointment by the Circuit Court of Cook County as Independent Administrator of his brother's estate. Plaintiff is given until 11/13/2014 to file his amended complaint.

**I.     Background[1]**

---

[1] The facts are drawn from Plaintiff's SAC. For the purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

The SAC alleges that on or about September 7, 2013, Plaintiff's brother, Marlon Horton, entered a CHA residential building located at 1815 W. Monroe Street in Chicago. The building was attended by two security guards that day—Walker and Moore. Walker and Moore, in turn, were jointly employed by two businesses—H.J. Russell and Maverick. H.J. Russell and Maverick allegedly acted under color of state law, providing the CHA property management and security services, respectively, at that building. The two companies are alleged to have provided these services pursuant to a delegation of police power by the State of Illinois under 310 ILCS 10/8.1a and other laws.

According to the SAC, when Horton entered the building, Walker and Moore asked him to leave. He left, at which point they arrested him without an arrest warrant, search warrant, exigent circumstances, reasonable suspicion, consent, or probable cause. Walker then fatally shot Horton. During the shooting, Moore failed to intervene, and instead actually aided and supported Walker.

Walker and Moore allegedly acted pursuant to widespread practices at H.J. Russell and Maverick, in which both companies failed "to adequately train and supervise [their] security guards in the performance of their police-like duties" or "to punish and discipline prior instances of similar misconduct." SAC at ¶ 59. These failures led to "numerous instances of civil rights violations by other security guards" and caused "other security guards to believe their actions [would] never be scrutinized and, in that way, thereby directly encourag[ed] future abuses." *Id.* The SAC additionally alleges that Walker and Moore acted within the scope of their employment or authorized agency with respect to both companies and that H.J. Russell and Maverick are therefore liable for all their torts under the doctrine of *respondeat superior*. *Id.* at ¶ 64.

Plaintiff filed this complaint against Walker and Moore for false arrest (Count I), use of excessive force (Count II), and conspiracy (Count IV) in violation of 42 U.S.C. § 1983 as well as intentional infliction of emotional distress (Count V), wrongful death under the Illinois Wrongful Death Act (Count VI), and battery (Count VII); against Moore for failure to intervene in violation of § 1983 (Count III); against the City of Chicago and the Chicago Housing Authority ("CHA") for policies and practices in violation of § 1983 (Count VIII); against H.J. Russell and Maverick for practices in violation of § 1983 (Count IX) and for the torts allegedly committed by their agents, Walker and Moore (Count XI); and against the City of Chicago and the CHA for indemnification of Walker and Moore (Count X). Plaintiff alleges that he is the "Special Administrator of the Estate of Marlon Horton." SAC at ¶ 1.

H.J. Russell and Maverick move to dismiss Counts IX and XI under Federal Rule of Civil Procedure 12(b)(6). Moore, joined by the CHA, the City of Chicago and Walker, move to dismiss Count VI under Federal Rule of Procedure 12(b)(1).

## II. Legal Standard

A motion to dismiss pursuant to rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given "'fair notice of what the * * * claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir.

3

2007) (quoting *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

Turning to Moore's argument that Plaintiff lacks standing, there are two types of rule 12(b)(1) challenges—factual and facial—and they have a "critical difference." *Apex Digital Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). When a defendant argues that "the plaintiffs' complaints, even if true, were purportedly insufficient to establish injury-in-fact," the challenge is a facial one. *Id.* at 443-44. "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Id.* at 443 (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Factual challenges, however, lie "where 'the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction.'" *Id.* (citing *United Phosphorus, Ltd. v. Angus Chem. Co.*, 332 F.3d 942, 946 (7th Cir. 2003)). Courts may look beyond the complaint only when a defendant brings a factual attack against jurisdiction. *Id.*

**III.   Analysis**

    **A.   H.J. Russell and Maverick**

        **1.   Count IX:** *Monell* **Claim**

4

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Private corporations acting under color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009)). Private corporations act under color of state law in two situations. In the first, "a state effectively directs, controls, or encourages the actions of a private party." *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996). In the second, "a state delegates a public function to a private entity," and that function is "traditionally the exclusive prerogative of the State." *Id.* (citations and quotations omitted).

To recover against a municipal or corporate defendant under § 1983, the plaintiff must show that the "injury was the result of the municipality's or corporation's official policy or custom." *Rice ex rel. Rice*, 675 F.3d at 675 (citations omitted). A plaintiff may demonstrate an official policy or custom through three means: first, "an express policy," second, "a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy," or, third, "through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Id.* (citations omitted). Where a plaintiff alleges an official policy or custom of inadequate training, the plaintiff must allege that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). In addition to showing a policy or custom, a plaintiff must show a "direct causal connection

between the policy or practice and his injury, in other words that the policy or custom was the moving force [behind] the constitutional violation." *Rice ex rel. Rice*, 675 F.3d at 675 (internal quotations omitted).

Plaintiff's SAC pleads the second theory of an official policy or custom—that is, "a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy." *Id.* H.J. Russell and Maverick move for dismissal under Rule 12(b)(6), arguing that the SAC's factual allegations showing a widespread practice as well as a connection between that practice and the constitutional injury are insufficient. The SAC's factual allegations regarding both are sufficient—albeit barely. Specifically, the SAC factually supports its allegation of a policy or custom by stating that H.J. Russell and Maverick had a widespread custom in which they specifically "failed to adequately train and supervise" their security guards and in which they "failed punish and discipline prior instances of similar misconduct." SAC at ¶ 59. The SAC factually supports its allegation of a causal connection by stating that these failures led to "numerous instances of civil rights violations by other security guards" and caused "other security guards to believe their actions will never be scrutinized" with the result of "directly encouraging future abuses," including the alleged injury in question. Discovery may belie Plaintiff's allegations, but in the meantime, the alleged facts "raise a reasonable expectation that discovery will reveal evidence." *Brooks*, 578 F.3d at 581. Moreover, the complaint gives H.J. Russell and Maverick "fair notice of what the * * * claim is" and what type of widespread practice allegedly caused the constitutional injury. *Bell Atl. Corp.*, 550 U.S. at 555 (quotation omitted).

Second, H.J. Russell and Maverick argue that the SAC alleges insufficient facts showing that the two companies acted under color of state law. Again, although Plaintiff's allegations are

6

not robust, they are sufficient to survive a motion to dismiss. Of the two factual scenarios in which a private entity acts under color of state law, the SAC alleges the second, in which the state delegates a public function to a private entity. Specifically, the SAC alleges that the state delegated its police power to Defendants through 310 ILCS 10/8.1a, which grants the CHA police power over its property, as well as other laws and ordinances. It further alleges that the CHA, in turn, delegated this police power to H.J. Russell in its role as property manager and to Maverick as a security company. Defendants argue that Plaintiff should have pled more facts establishing the precise nature of the delegation of police power, but Plaintiff may need access to discovery to obtain these facts, which may be contained in Defendants' service agreements with the CHA. For purposes of deciding a motion to dismiss, Plaintiff's allegations provide Defendants with "fair notice of what the * * * claim is," *Bell Atl. Corp.*, 550 U.S. at 555 (quotation omitted), and are sufficient to "raise a reasonable expectation that discovery will reveal evidence" supporting Plaintiff's allegations of this widespread practice. *Brooks*, 578 F.3d at 581. If discovery yields nothing to support Plaintiff's claims against Russell and/or Maverick, those Defendants may pursue summary judgment at any time.

### 2. Count XI: *Respondeat Superior* Liability

H.J. Russell and Maverick also move to dismiss Count XI, in which Plaintiff alleges that the two companies are liable for "all torts" committed by Walker and Moore under a theory of *respondeat superior*. The parties agree that *respondeat superior* liability does not exist under § 1983 and, therefore, that Count XI cannot validly state a claim for the two companies' vicarious liability for their employees' alleged § 1983 violations.[2] Plaintiff's response brief states that

---

[2] In *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782 (7th Cir. 2014), the Seventh Circuit suggested that it may overrule precedents establishing that private corporations cannot be found liable for § 1983 violations under a theory of *respondeat superior*. However, as long as those precedents remain good law,

7

Count XI thus applies only to Illinois common law torts. Because both parties agree that under existing law Count XI can only state a claim for state torts, the Court interprets the SAC accordingly.

In Illinois, an employer can be vicariously liable for torts committed by an employee in the scope of the employment. *Wright v. City of Danville*, 174 Ill. 2d 391, 405 (1996). Courts use three criteria to determine whether an employee has committed a tort in the scope of the employment: first, whether the tort is "of the kind he is employed to perform," second, whether "it occurs substantially within the authorized time and space limits," and, third, whether "it is actuated, at least in part, by a purpose to serve the master." *Pyne v. Witmer*, 129 Ill. 2d 351, 360 (1989) (citation omitted); *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 835 (2006) (citation omitted).

H.J. Russell and Maverick move to dismiss Plaintiff's claim that they are vicariously liable for Walker and Moore's common law torts, arguing that Plaintiff has pled insufficient facts to make this claim plausible. Again, Plaintiff walks the fine line separating a speculative and a plausible claim, barely pleading sufficient facts to survive this motion to dismiss. The SAC factually supports its allegation of an employment or agency relationship by stating that H.J. Russell and Maverick are corporations that jointly employed Walker and Moore as security guards. The SAC factually supports its allegation that Defendants' two employees committed torts by stating that Walker and Moore committed battery, intentional infliction of emotional distress, and wrongful death on September 7, 2013 when they arrested Horton, when Walker shot Horton, and when Moore failed to intervene. Plaintiff further alleges facts corresponding with two of the three criteria that courts use to determine whether an employee acted in the scope of

---

the Court is bound to apply the current rule that *respondeat superior* liability does not exist under § 1983, even where a corporate defendant acts under color of state law.

employment. With respect to the first criteria—whether the allegedly tortious actions were "of the kind [they were] employed to perform"—the SAC alleges that Walker and Moore arrested and shot Horton in connection with their employment as security guards. With respect to the second criteria—whether the alleged torts occurred "substantially within the authorized time and space limits"—the SAC alleges that the torts occurred while Walker and Moore were working at a location where the two companies provided security guard services.

H.J. Russell and Maverick also move for dismissal on the ground that principals cannot be held liable for the intentional torts of their agents. Illinois law indicates otherwise at least in some factual scenarios. An employer may be vicariously liable for an intentional tort "motivated in part by an intent to serve the employer's purpose and in part by the employee's venting of emotion," but an employer is not vicariously liable for a tort "committed solely for the employee's own benefit." *Maras v. Milestone, Inc.*, 348 Ill. App. 3d 1004, 1008 (Ill. App. Ct. 2004) (citing *Sunseri v. Puccia,* 97 Ill. App. 3d 488, 493 (Ill. App. Ct. 1981); *Webb by Harris v. Jewel Cos. Inc.*, 137 Ill. App. 3d 1004, 1006 (Ill. App. Ct. 1985)). "The outrageousness of an act may be evidence that the employee has gone beyond the scope of his or her employment, but it is not conclusive." *Maras*, 348 Ill. App. 3d at 1008 (citing *Sunseri,* 97 Ill. App. 3d at 493). Lastly, an employer's liability for an intentional tort depends on "whether the act was a predictable outgrowth of acts the employer authorized the employee to perform." *Maras*, 348 Ill. App. 3d at 1008 (citing *Rubin v. Yellow Cab Co.,* 154 Ill. App. 3d 336, 339 (1987); RESTATEMENT (SECOND) OF AGENCY § 228(1)(d) (1958)). In view of the context-based inquiry mandated under the case law, it would be premature to dismiss Count XI prior to discovery that may shed light on the circumstances surrounding the shooting incident.

Third, H.J. Russell and Maverick argue that Count XI fails because it does not incorporate previous counts' allegations that the employees committed the underlying torts, arguing that there is no liability under *respondeat superior* in the absence of an underlying tort. This argument considers Plaintiff's pleading too formalistically. The Court does not read each count in isolation, looking to previous allegations only where a count expressly incorporates them. Rather, the Court determines whether a complaint states a claim by reading the complaint as a whole. See *Atkins*, 631 F.3d at 832; *cf. Scott*, 195 F.3d at 952 ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole"). When read holistically, the SAC alleges both the underlying torts of the employees and the vicarious liability of the employers; accordingly, the SAC states a claim.

B.  **Shaquila Moore**

Moore, joined by the CHA, the City of Chicago and Walker,[3] moves for dismissal under Federal Rule of Civil Procedure Rule 12(b)(1), arguing that Plaintiff lacks standing to sue under the Illinois Wrongful Death Act and that the Court therefore lacks jurisdiction.[4]

The Illinois Wrongful Death Act permits a plaintiff to bring a claim where a person's death is caused by wrongful act, neglect or default. 740 ILCS 180/1. "Every such action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recovered in every such action shall be for the

---

[3] The Court previously granted motions by the CHA [72] as well as the City of Chicago and Moore [73] to join Moore's motion to dismiss. The SAC alleges only that Walker and Moore violated the Illinois Wrongful Death Act; it does not assert a wrongful death claim against the CHA or the City. Presumably, the CHA and the City join Moore's motion because they may have a duty to indemnify an employee held liable for wrongful death. Because the joining parties present the same arguments as Moore, the Court's analysis of Moore's motion applies equally to their arguments.

[4] Moore also argues that Plaintiff lacks standing under the Illinois Survival Act. The SAC only alleges a violation of the Illinois Wrongful Death Act. Accordingly, the Court does not consider this argument.

10

exclusive benefit of the surviving spouse and next of kin of such deceased person." 740 ILCS 180/2. Where the only asset of the deceased's estate is the wrongful death claim itself, a court may appoint a "special administrator" to serve as the personal representative. 740 ILCS 180/2.1. The Act requires one personal representative to bring a single action on behalf of all the surviving spouse and next of kin to avoid multiple lawsuits. *Pruitt v. Jockisch*, 228 Ill. App. 3d 295, 298 (1992). The personal representative thus acts as a "nominal party to [the] action, effectively filing suit as a statutory trustee on behalf of the surviving spouse and next of kin, who are the true parties in interest." *Glenn v. Johnson*, 198 Ill. 2d 575, 583 (2002) (citation omitted). Where the person identified as the personal representative in the complaint has not yet been appointed as the administrator, there is no proper plaintiff. *Nagel v. Inman*, 402 Ill. App. 3d 766, 770 (2010).

First, Moore facially challenges Plaintiff's standing, arguing that the SAC fails to allege that Plaintiff was a court-appointed executor or administrator. In evaluating this facial challenge, the court looks only at the allegations in the complaint. *Apex Digital Inc.*, 572 F.3d at 443. Because the opening line of the SAC describes that Plaintiff as the "Special Administrator of the Estate of Marlon Horton," the SAC survives.

Second, the CHA argues that Plaintiff factually lacks standing; it contends that a search of the records of the Circuit Court of Cook County, Illinois revealed at the time of the briefing on this motion that Plaintiff has not been appointed administrator of Jarrod Horton's estate. In evaluating this factual challenge, the Court looks beyond the complaint, *id.*, and notes that Plaintiff's response motion states that he was formally appointed Independent Administrator of his brother's estate on July 22, 2014, approximately one month after the SAC was filed on June

11

25, 2014. Attached to his motion is an order from the probate division of the Circuit Court of Cook County appointing him the Independent Administrator of Jarrod Horton's estate.

Because Plaintiff was appointed an administrator after he filed his complaint, he has now cured a defect in his prior pleading. As the cases cited in Plaintiff's response brief [80] indicate, Illinois law is rather forgiving in regard to the timing by which a plaintiff in a wrongful death action is appointed to be administrator of the estate of the deceased. Both state and federal courts in Illinois have recognized that so long as the action itself is filed within the applicable limitations period and there is no prejudice to the defendants, the amendment of the complaint to recognize the appointment of the administrator relates back to the filing of the original complaint. See, *e.g.*, *Jablonski v. Rothe*, 287 Ill. App. 3d 752, 754-57 (2d Dist. 1997); *Hardimon v. Carle Clinic Ass'n*, 272 Ill. App. 3d 117, 118-23 (4th Dist. 1995); *Jefferson v. Davis*, 1990 U.S. Dist. LEXIS 4682, at 1-2 (N.D. Ill. Apr. 19, 1990). In view of these cases, Plaintiff is given until 11/13/2014 to file an amended complaint recognizing his appointment as Independent Administrator of his brother's estate.

**IV. Conclusion**

For the reasons stated above, Defendants' motions to dismiss [56, 57, 69] are denied, and Plaintiff is given until 11/13/2014 to file an amended complaint.

Dated: October 29, 2014

_____

Robert M. Dow, Jr.
United States District Judge