## UNITED STATES DISTRICT COURT
## NORTSHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JARROD HORTON, as Independent Administrator of the Estate of MARLON HORTON, Deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No.  13 CV 6865 |
| vs. | ) ) ) | Judge Dow |
| The CITY OF CHICAGO, a municipal corporation, CHICAGO POLICE OFFICER KENNETH F. WALKER, Star No. 9191, SHAQUILA R. MOORE, The CHICAGO HOUSING AUTHORITY, H. J. RUSSELL & COMPANY, and MAVERICK SECURITY, INC., | ) ) ) ) ) ) ) ) ) | Magistrate Judge Valdez |
| Defendants. | ) | |

## FOURTH AMENDED COMPLAINT

Plaintiff, JARROD HORTON, as Independent Administrator of the Estate of MARLON

HORTON, deceased ("Plaintiff"), through his attorneys, makes the following complaint against The

CITY OF CHICAGO, a municipal corporation, Chicago Police Officer KENNETH F. WALKER,

Star No. 9191, SHAQUILA R. MOORE, The CHICAGO HOUSING AUTHORITY, H. J.

RUSSELL & COMPANY, and MAVERICK SECURITY, INC.:

## JURISDICTION AND VENUE

1.  This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Decedent's rights as secured by the United States Constitution, and under Illinois State law.

2.  This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3.  Venue is proper under 28 U.S.C. § 1391(b).  All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this judicial district.

## PARTIES

4. At the time of his death, MARLON HORTON was a 28-year-old African-American man. At all times relevant hereto, MARLON HORTON was a citizen of the United States and a resident of the City of Chicago, Illinois.

5. JARROD HORTON is the brother of decedent MARLON HORTON. Pursuant to an order of the Circuit Court of Cook County dated July 22, 2014, JARROD HORTON was appointed as the Independent Administrator of his late brother's estate and therefore has standing to bring this action on behalf of the estate. A copy of said order and the Letter of Appointment is attached hereto and incorporated herein by reference as Exhibit A.

6. At all times relevant hereto, Defendant KENNETH F. WALKER was employed by the Chicago Police Department as a sworn police officer, Star No. 9191, and he was also employed as a security guard for Defendant MAVERICK SECURITY, INC. At all times relevant hereto, Defendant WALKER was acting under color of law and within the scope of his employment with Defendant CITY OF CHICAGO and Defendant MAVERICK SECURITY, INC. Alternatively, to the extent that Defendant WALKER was on off-duty status at the time of the events described herein, he was nevertheless acting under color of law as he was asserting police-type powers on behalf of a public entity, Defendant CHICAGO HOUSING AUTHORITY, and because he held himself out as Chicago Police Officer, displayed police power, used a weapon issued to him by the Chicago Police Department, and was required by law to be on duty at all times.

7. At all times relevant hereto, Defendant SHAQUILA R. MOORE was employed as a security guard for Defendant MAVERICK SECURITY, INC. and was acting within the scope of her employment. Alternatively, at all times relevant hereto, she was acting under color of law as she was asserting police-type powers on behalf of a public entity, DEFENDANT CHICAGO HOUSING AUTHORITY.

8. Defendant CITY OF CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois, and was at all times relevant hereto, the employer and principal of Defendant WALKER.

9. At all times relevant hereto, Defendants WALKER and MOORE were acting within the scope of their employment or as authorized agents of Defendant CHICAGO HOUSING AUTHORITY, Defendant H. J. RUSSELL & COMPANY, and DEFENDANT MAVERICK SECURITY, INC.

10. At all times relevant hereto, Defendants WALKER and MOORE were acting under color of law because they were acting as an arm of the State of Illinois by virtue of the police power delegated to them through 310 ILCS 10/8.1a and other laws and ordinances, and because by arresting and fatally shooting MARLON HORTON, they did in fact exercise police powers.

11. Defendant CHICAGO HOUSING AUTHORITY is an agency of the City of Chicago and was at all times relevant hereto, a joint employer of the Defendants WALKER and MOORE or it held itself out as the employer of the Defendants WALKER and MOORE.

12. Defendant H. J. RUSSELL & COMPANY is an Illinois corporation authorized to do business in the state of Illinois, with its principal place of business in this judicial district. At all times relevant hereto, Defendant H. J. RUSSELL & COMPANY was a joint employer of the Defendants WALKER and MOORE. At all times relevant hereto, Defendant H. J. RUSSELL & COMPANY was acting as an arm of the State of Illinois by virtue of the police power delegated to it through 310 ILCS 10/8.1a and other laws and ordinances.

13. Defendant MAVERICK SECURITY, INC. is an Illinois corporation authorized to do business in the state of Illinois, with its principal place of business located in this judicial district. At all times relevant hereto, Defendant MAVERICK SECURITY, INC. was a joint employer of the Defendants WALKER and MOORE. At all times relevant hereto, Defendant MAVERICK SECURITY, INC. was acting as an arm of the State of Illinois by virtue of the police power delegated to it through 310 ILCS 10/8.1a and other laws and ordinances.

## FACTUAL ALLEGATIONS

14. On or about September 7, 2013, MARLON HORTON was inside a CHICAGO HOUSING AUTHORITY residential building located at 1815 W. Monroe St., in Chicago, Cook County, Illinois (the "Property").

15. At that time, MARLON HORTON was asked to leave the building by Defendants WALKER AND MOORE.

16. As requested, MARLON HORTON left the building.

17. DEFENDANT WALKER, with the aid and support of Defendant MOORE, proceeded to unlawfully and without reasonable cause shoot Decedent MARLON HORTON, causing him severe pain, severe emotional distress, and death.

## Count I – 42 U.S.C. § 1983 – Excessive Force

18. Plaintiff re-alleges the preceding paragraphs as if restated here.

19. On or about September 7, 2013, Defendant WALKER subjected Decedent MARLON HORTON to excessive force, namely, by fatally shooting him, in violation of the Fourth Amendment to the United States Constitution.

20. This excessive force was objectively unreasonable and was undertaken intentionally, or with reckless indifference to MARLON HORTON's constitutional rights.

21. As a direct and proximate result of the unjustified and excessive use of force, MARLON HORTON suffered severe injuries, including but not limited to severe pain and suffering, severe emotional distress, and loss of life.

WHEREFORE, Plaintiff prays for judgment against Defendant WALKER for compensatory and punitive damages, costs, reasonable attorney's fees, and all such other relief as this Court finds just and equitable.

## Count II – 42 U.S.C. § 1983 – Failure to Intervene

22. Plaintiff re-alleges the preceding paragraphs as if restated here.

23. During the fatal shooting as described above, DEFENDANT MOORE stood by without intervening to prevent the fatal shooting of Decedent by Defendant WALKER. Although she had a reasonable opportunity to prevent this harm, she failed to do so.

24. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to MARLON HORTON's constitutional rights.

25. As a direct and proximate result of this failure to intervene, MARLON HORTON suffered pain and injury, severe emotional distress, and death.

WHEREFORE, Plaintiff prays for judgment against Defendant MOORE for compensatory and punitive damages, costs, reasonable attorney's fees, and all such other relief as this Court finds just and equitable.

## Count III – 42 U.S.C. § 1983 – Failure to Provide Medical Care

26. Plaintiff re-alleges the preceding paragraphs as if restated here.

27. Immediately after the shooting of decedent, Defendants MOORE and WALKER were directed by a 911 operator to provide medical care to decedent by applying a clean sheet to his wound and applying pressure.

28. Defendants MOORE and WALKER failed to follow this instruction, and failed to provide medical care to decedent.

29. Decedent had a serious medical need of which Defendants WALKER and MOORE were aware.

30. Defendants Walker and Moore's failure to provide medical care to decedent was unreasonable under the circumstances.

31. As a direct and proximate result of Defendants WALKER and MOORE'S failure to provide medical care to decedent, decedent suffered significant pain, injuries, and death.

WHEREFORE, Plaintiff prays for judgment against Defendants WALKER and MOORE for compensatory and punitive damages, costs, reasonable attorney's fees, and all such other relief as this Court finds just and equitable.

## Count IV – 42 U.S.C. § 1983 Conspiracy

32. Plaintiff re-alleges the preceding paragraphs as if restated here.

33. Defendants WALKER and MOORE agreed and conspired together to violate the constitutional rights of MARLON HORTON.

34. Defendants WALKER and MOORE did reach this understanding and agreement and did engage in this course of conduct with the mutual purpose, objective and knowledge that they would deprive MARLON HORTON of his right to be free from excessive force and false arrest, as guaranteed by the U.S. Constitution.

35. Said conspiracy violated MARLON HORTON's 4th and 14th Amendment rights, under color of law, in contravention of 42 U.S.C. § 1983.

36. Acting in furtherance of this plan and conspiracy, Defendants WALKER and MOORE did commit overt acts, including the illegal arrest, detention, and use of excessive force against MARLON HORTON on or about September 7, 2013, as more fully alleged in the preceding paragraphs.

37. This course of conduct by Defendants WALKER and MOORE described in this count was done willfully, maliciously, intentionally, or with reckless disregard and gross negligence, and directly and proximately caused injury and harm to MARLON HORTON.

WHEREFORE, Plaintiff prays for judgment against Defendants WALKER and MOORE for compensatory and punitive damages, costs, reasonable attorney's fees, and all such other relief as this Court finds just and equitable.

## Count V– Intentional Infliction of Emotional Distress

38. Plaintiff restates the preceding paragraphs as if fully restated here.

39. Defendants WALKER and MOORE'S conduct was extreme and outrageous.

40. Defendant WALKER and MOORE intended to cause MARLON HORTON to suffer severe emotional distress, or they acted with reckless disregard of the probability that their conduct would cause MARLON HORTON to suffer severe emotional distress until he died.

41. As a direct and proximate result of Defendants' extreme and outrageous conduct, MARLON HORTON suffered severe emotional distress prior to his death.

WHEREFORE, Plaintiff, on behalf of Decedent's estate, prays for judgment against

Defendants in an amount that fairly compensates Decedent for the emotional distress he suffered,

as well as all such other relief as this Court finds just and equitable.

## Count VI–Illinois Wrongful Death Act Claim

42. Plaintiff restates the preceding paragraphs as if fully restated here.

43. At all relevant times, Defendants WALKER and MOORE owed MARLON HORTON a duty to refrain from wanton and willful acts and omissions which could cause him harm.

44. Defendants WALKER and MOORE breached their duty to MARLON HORTON by willfully and wantonly using excessive and deadly force against him.

45. Defendants WALKER and MOORE'S acts and omissions, as more fully alleged above, constituted utter indifference or conscious disregard for the health and safety of decedent MARLON HORTON.

46. As a direct and proximate result of the aforementioned willful and wanton acts and omissions, MARLON HORTON died on or about September 7, 2013.

47. MARLON HORTON, is survived by his heirs TRAYVON HOLCOMB, ANAYA HOLCOMB, and MARIEL HORTON.

48. By reason of the death MARLON HORTON, his heirs have suffered damages, including grief, the loss of support, comfort, love, affection, protection, and society of the decedent.

WHEREFORE, on behalf of Decedent's next of kin, Plaintiff prays for judgment against

Defendants in an amount sufficient to compensate them for the loss of Decedent, and all such other

relief as this Court finds just and equitable.

## Count VII–Battery

49. Plaintiff restates the preceding paragraphs as if fully restated here.

50. Defendants WALKER and MOORE intended to cause a harmful or offensive bodily contact to MARLON HORTON without a privilege to do so.

51. By seizing, detaining, and using deadly force against MARLON HORTON, Defendants WALKER and MOORE did in fact cause bodily harm to MARLON HORTON.

52. As a direct and proximate result of the Defendants WALKER and MOORE'S harmful and offensive bodily contact with MARLON HORTON, he suffered physical pain, emotional distress and death.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory and punitive damages, costs, reasonable attorney's fees, and all such other relief as this Court finds just and equitable.

### Count VIII–Negligent Supervision
(Against Defendants H.J. Russell and Maverick Security)

53. Plaintiff restates the preceding paragraphs as if fully restated here.

54. Because H.J. RUSSELL voluntarily undertook to oversee the management of various functions at the Property, including security, it had a duty to third parties, including MARLON HORTON, to use reasonable care in the supervision of security guard services at the Property.

55. Because MAVERICK SECURITY voluntarily undertook to provide security services at the Property, it had a duty to third parties, including MARLON HORTON, to use reasonable care in the supervision of security guards at the Property.

56. Upon information and belief, MAVERICK SECURITY did not adequately supervise its security guards in order to ensure that they did not pose a risk of harm to third parties. This includes, but is not limited to, the failure to adequately train security guards in the proper use of force, the failure to adequately train security guards in the proper use of firearms, the failure to adequately train security guards in the provision of emergency medical care, allowing its security guards to work excessive amounts of hours, the failure to conduct adequate background checks of its security guards, and the failure to take adequate disciplinary actions against its security guards for violations of laws and internal policies.

57. H.J. RUSSELL knew or should have known that MAVERICK SECURITY did not adequately supervise its security guards to ensure that the security guards MAVERICK SECURITY hired to guard the Property did not pose a risk of harm to third parties.

58. The aforementioned failure by MAVERICK SECURITY to adequately supervise its security guards, including defendants WALKER and MOORE, thus they created a risk of harm to third parties, including MARLON HORTON.

59. H.J. RUSSELL breached its duty of care to MARLON HORTON by failing to adequately supervise the operations of MAVERICK SECURITY to provide security guard services at the Property.

60. MAVERICK SECURITY breached its duty of care to MARLON HORTON by failing to adequately supervise the actions of Defendants WALKER and MOORE as security guards at the Property.

61. As a direct and proximate result of the foregoing breaches of duty by H.J. RUSSELL and MAVERICK SECURITY, MARLON HORTON suffered physical pain, severe emotional distress and death.

WHEREFORE, Plaintiff prays for judgment against Defendants H.J. RUSSELL and

MAVERICK SECURITY for compensatory and punitive damages, costs, reasonable attorney's fees,

and all such other relief as this Court finds just and equitable.

### Count IX–Policy Claim
(Against Defendant CITY OF CHICAGO)

62. Plaintiff restates the preceding paragraphs as if fully restated here.

63. The misconduct of Defendant WALKER alleged above was undertaken pursuant to the policy and practice of the City of Chicago.

64. As a matter of both policy and practice, the City of Chicago encourages the type of misconduct at issue in this case by Chicago Police Officers here by failing to adequately investigate and discipline its officers who have been involved in shooting of civilians, and its failure to do so constitutes deliberate indifference.

65. According to City of Chicago statistics, since its inception in 2007, the City of Chicagio's Independent Police Review Authority (IPRA) has investigated nearly 400 civilian shootings by Chicago police officers, but it has only found one such shooting to be unjustified.

66. Upon information and belief, even when IPRA investigators find a police shooting to have been unjustified, Defendant City, through the supervisors at IPRA, refuse to make findings against Chicago police officers involved in civilian shootings, and force their investigators to change their findings and reports to hide police officer misconduct from public scrutiny and oversight.

67. As a direct result of the aforementioned failures by Defendant City to adequately investigate and civilian shootings and take appropriate disciplinary action against City of Chicago police officers, such Officers are led to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as the shooting death of MARLON HORTON.

WHEREFORE, Plaintiff prays for judgment against Defendant CITY OF CHICAGO for

compensatory damages, costs, reasonable attorney's fees, and all such other relief as this Court finds

just and equitable.

### Count X–Policy Claim
(Against Defendant CHICAGO HOUSING AUTHORITY)

68. Plaintiff restates the preceding paragraphs as if fully restated here.

69. The misconduct of Defendants Walker, Moore, Maverick and H.J. Russell was undertaken pursuant to the policy and practice of the CHICAGO HOUSING AUTHORITY.

70. As a matter of both policy and practice, the CHICAGO HOUSING AUTHORITY encourages the type of misconduct at issue in this case by failing to adequately investigate and train the security guards, security guard companies, and property management companies it hires and employs to provide security guard services at CHICAGO HOUSING AUTHORITY properties; by failing to adequately monitor and supervise such entitles in the performance of security guard services at CHICAGO HOUSING AUTHORITY properties; and by failing to take adequate disciplinary measures or terminate the contracts of such entities when their employees violate the constitutional rights of individuals on CHICAGO HOUSING AUTHORITY property, and these failures constitute deliberate indifference.

71. As a direct result of the aforementioned failures by Defendant CHICAGO HOUSING AUTHORITY to adequately train, investigate, monitor, supervise, and discipline security guards, security guard companies, and property management companies, these entities and the individuals who work for them, such as WALKER and MOORE, are led to believe their actions will never be scrutinized and, in that way, CHA directly encourages unconstitutional conduct, such as the shooting death of MARLON HORTON, and the failure to provide MARLON HORTON with medical care.

WHEREFORE, Plaintiff prays for judgment against Defendant CHICAGO HOUSING AUTHORITY for compensatory damages, costs, reasonable attorney's fees, and all such other relief as this Court finds just and equitable.

**Count XI–Indemnification**
(Against Defendants CITY OF CHICAGO and CHICAGO HOUSING AUTHORITY)

72. Plaintiff restates the preceding paragraphs as if fully restated here.

73. The misconduct alleged above against Defendants WALKER and MOORE was committed within the scope of their employment with and/or within their authorized agency for Defendants CITY OF CHICAGO and CHICAGO HOUSING AUTHORITY.

74. Defendants CITY OF CHICAGO and CHICAGO HOUSING AUTHORITY are public entities required to provide indemnity within the meaning of 735 ILCS 10/9-102 and other applicable laws and ordinances for all actual damages caused by Defendants WALKER and MOORE while acting in the scope of their employment or within their authorized agency.

WHEREFORE, Plaintiff prays for judgment against Defendants CITY OF CHICAGO and CHICAGO HOUSING AUTHORITY for compensatory damages, costs, reasonable attorney's fees, and all such other relief as this Court finds just and equitable.

## Count XII–*Respondeat Superior*

75. Plaintiff restates the preceding paragraphs as if fully restated here.

76. The misconduct alleged above against Defendants WALKER and MOORE was committed within the scope of their employment with and/or within their authorized agency for Defendants H. J. RUSSELL & COMPANY, MAVERICK SECURITY, INC., CHICAGO HOUSING AUTHORITY and the CITY OF CHICAGO.

77. Under the doctrine of *respondeat superior*, Defendants are liable as the principals for the torts committed by their agents, Defendants WALKER and MOORE, as described more fully above.

WHEREFORE, Plaintiff prays for judgment against Defendants CITY OF CHICAGO,

CHICAGO HOUSING AUTHORITY, H. J. RUSSELL & COMPANY and MAVERICK

SECURITY, INC. for compensatory and punitive damages, costs, reasonable attorney's fees, and all

such other relief as this Court finds just and equitable.

Respectfully Submitted,

JARROD HORTON

By:/s Josh Friedman
One of Plaintiff's Attorneys

JEFFREY B. GRANICH (A.R.D.C. No. 6207030)
KATIE Z. EHRMIN (A.R.D.C. No. 6292120)
Law Offices of Jeffrey B. Granich
53 W. Jackson Blvd., Suite 1028
Chicago, IL 60604
(312) 939-9009

TORREYA HAMILTON (A.R.D.C. No. 6229397)
HAMILTON LAW OFFICE, L.L.C.
53 West Jackson Boulevard, Suite 452
Chicago, IL 60604
Phone: 312.726.3173

JOSH M. FRIEDMAN (A.R.D.C. No. 6220313)
Law Offices of Josh M. Friedman
53 W. Jackson Blvd., Suite 1028
Chicago, IL 60604
(312) 886-0277

## <u>CERTIFICATE OF SERVICE</u>

I, Josh Friedman, Counsel for Plaintiff, hereby certify that a copy of the foregoing **Fourth Amended Complaint** was served pursuant to the United States District Court for the Northern District of Illinois' Electronic Filing System on all counsel of record on this 6th day of October, 2015.


/s/ Josh M. Friedman
Counsel for Plaintiff