# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JARROD HORTON, as Independent Administrator of the Estate of MARLON HORTON, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 13-cv-6865 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| The CITY OF CHICAGO, a municipal corporation, CHICAGO POLICE OFFICER KENNETH F. WALKER, Star No. 9191, SHAQUILA R. MOORE, The CHICAGO HOUSING AUTHORITY, H.J. RUSSELL & COMPANY, and MAVERICK SECURITY, INC., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Chicago's motion [101] to: (1) bifurcate Plaintiff's claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1976), from Plaintiff's other claims; (2) stay all discovery and trial on the *Monell* claim; and (3) enter the City's proposed "Limited Consent to Entry of Judgment Against Defendant City of Chicago." Also before the Court are Defendant Chicago Housing Authority's partial joinder [109] and Defendant H.J. Russell & Company's partial joinder [108] in the City's motion [101]. For the reasons set forth below, the Court grants the City of Chicago's motion [101] and the Chicago Housing Authority's partial joinder [109]. Discovery and trial on Plaintiff's *Monell* claims (Counts IX and X of the Fourth Amended Complaint) will be stayed until the other claims are resolved. The Court enters the City's proposed "Limited Consent to Entry of Judgment Against Defendant City of

Chicago." H.J. Russell's partial joinder [108] is denied as moot because Plaintiff removed the *Monell* claim against H.J. Russell from its governing Fourth Amended Complaint [128].

**I.   Background[1]**

This lawsuit arises from an incident on September 7, 2013 in which Marlon Horton ("Horton") was fatally shot by an off-duty Chicago Police Officer, Kenneth Walker ("Walker"), on the grounds of a Chicago Housing Authority ("CHA") residential building located at 1815 W. Monroe St. in Chicago (the "Property"). The lawsuit is brought by Horton's surviving brother, Jarrod Horton ("Plaintiff"), as Independent Administrator of Horton's estate.

Plaintiff alleges that on September 7, 2013, Horton was in a CHA residential building located on the Property. At that time, Walker and Shaquila Moore ("Moore") were working on the Property as security guards. Walker and Moore were jointly employed by CHA, Maverick Security, Inc. ("Maverick Security"), and H.J. Russell & Company ("H.J. Russell"). Walker was also employed as a police officer by the City of Chicago ("City"). Walker and Moore asked Horton to leave the residential building. Horton left the building. Walker, with the aid and support of Moore, then shot Horton with a firearm. 911 was called. Moore and Walker were directed by the 911 operator to provide medical care to Horton by applying a clean sheet to his wound and applying pressure. Walker and Moore did not follow this instruction and did not provide medical care to Horton. Horton died from his injuries on the same day.

Plaintiff filed the instant lawsuit against Walker, Moore, the City, CHA, Maverick Security, and H.J. Russell. Plaintiff's governing Fourth Amended Complaint [128] contains the following claims: a Section 1983 claim against Walker for excessive force (Count I); a Section 1983 claim against Moore for failure to intervene (Count II); a Section 1983 claim against

---

[1] For purposes of this order, the Court assumes as true the allegations in Plaintiff's Fourth Amended Complaint [128].

2

Walker and Moore for failure to provide medical care (Count III); a Section 1983 claim against Walker and Moore for conspiracy (Count IV); a state law claim against Walker and Moore for intentional infliction of emotional distress (Count V); a claim against Walker and Moore under Illinois' Wrongful Death Act (Count VI); a claim against Walker and Moore for battery (Count VII); a claim against H.J. Russell and Maverick Security for negligent supervision (Count VIII); a *Monell* claim against the City based on its alleged failure to adequately investigate and discipline its officers who have been involved in shootings of civilians (Count IX); a *Monell* claim against CHA based on its alleged failure to adequately investigate, train, monitor, and discipline security guards, security guard companies, and property management companies who provide services at CHA properties (Count X); a claim against the City and CHA for indemnification (Count XI); and a respondeat superior claim against the City, CHA, H.J. Russell, and Maverick Security (Count XII).

Before Plaintiff was granted leave to file his Fourth Amended Complaint [128], the City filed a motion [101] to bifurcate Plaintiff's *Monell* claims and stay discovery and trial on those claims. Along with its motion, the City filed a "Limited Consent to Entry of Judgment." Without admitting to liability, the City agrees to "waive[] its right under *Monell* not to be found liable for damages pursuant to Section 1983 without proof that the City by its 'policy, custom, or practice,' and with the requisite degree of culpability, caused the alleged constitutional violation." [101-2] at 4. The City also "consent[s] to entry of judgment against it for compensatory damages and, to the extent allowed by the court, reasonable attorney fees pursuant to 42 U.S.C. § 1988, if the finder of fact in this case finds that Defendant Walker is liable for a violation of Plaintiff's constitutional rights as alleged in the Complaint." [101-2] at 3. The City further consents to entry of judgment against it in the event that the trier of fact finds that

Defendant Walker violated Horton's constitutional rights but is, nonetheless, "not liable to Plaintiff because he is entitled to qualified immunity." *Id.* at 3-4. The City's consents "also will apply if Defendant Walker is found liable to Plaintiff on a motion for summary judgment, or found liable to Plaintiff pursuant to any other court procedure not involving a finder of fact that determines, based on the merits of this case, that Defendant Walker is liable for a violation of Plaintiff's constitutional rights as alleged in the Complaint." [101-2] at 3.

CHA and H.J. Russell join in the City's motion to bifurcate ([108] and [109]), but do not join the City's request for entry of the Limited Consent to Entry of Judgment. After Plaintiff filed his Fourth Amended Complaint, Plaintiff and the City filed status reports ([135] and [137]) explaining how the Defendants' bifurcation motions are affected by Plaintiff's Fourth Amended Complaint.

## II. Legal Standard

Federal Rule of Civil Procedure 42(b) authorizes federal courts to order a separate trial of one or more separate issues or claims if separation (or bifurcation) is warranted "[f]or convenience, to avoid prejudice, or to expedite and economize." Bifurcation may be appropriate if "the separation would prevent prejudice to a party or promote judicial economy." *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (citation omitted). "If one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment," which guarantees a jury trial for civil cases in federal court. *Id.* The Court enjoys "considerable discretion" over its decision. *Treece v. Hochstetler*, 213 F.3d 360, 364-65 (7th Cir. 2000) (internal quotations omitted). Federal Rule of Civil Procedure 26(d) also permits a court to stay discovery on *Monell* claims. See, *e.g.*, *Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 927 (N.D. Ill. 2012). A *Monell* claim, named after the

Supreme Court's decision in *Monell v. Department of Soc. Servs. of the City of New York,* 436 U.S. 658 (1978), is a claim brought against a municipality to hold it liable for constitutional violations that allegedly occurred as a result of the municipality's policy or practice. *Hobley v. Burge*, 2004 WL 2658075, at *8 (N.D. Ill. Oct. 13, 2004).

"*Monell* claims are most often bifurcated in this district when a case is rooted in allegations of excessive force." *Carr*, 908 F. Supp. 2d at 934. Such motions and the inclination of many judges to grant them stems in large part from the recognition that, often, "claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them." *Moore v. City of Chicago,* 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007). This work ultimately may be for naught because in "many if not most cases, disposition of the individual claims will either legally or practically end the litigation." *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000). If the plaintiff fails to prove that he suffered a constitutional injury at the hands of a municipal employee, this typically will be fatal to his *Monell* claim against the municipality. *Id.* And if the plaintiff prevails on his constitutional claim against the municipal employee, he "is likely not to want or need to proceed any further, at least in this district and state" (*id.*), because Illinois law requires a "local public entity * * * to pay any tort judgment or settlement for compensatory damages * * * for which it or an employee while acting within the scope of his employment is liable" (745 ILCS 10/9-102).

The Court evaluates each motion to bifurcate on its own merits. The undersigned judge has both granted and denied motions to bifurcate filed by municipal defendants. *Compare Terry v. Cook County Dep't of Corr.*, 2010 WL 2720754 (N.D. Ill. July 8, 2010) (denying motions to

5

bifurcate), *with Cruz v. City of Chicago*, 2008 WL 5244616 (N.D. Ill. Dec. 16, 2008) (granting motion to bifurcate).

### III.  Analysis

#### A.  The City's Motion to Bifurcate

In his *Monell* claim against the City (Count X), Plaintiff alleges that the City's policy and practice of failing to adequately investigate and discipline its officers who have been involved in shootings of civilians encouraged Wilson's misconduct on September 7, 2013. The City argues that the Court should bifurcate the *Monell* claim (Count X) for purposes of discovery and trial because bifurcation would serve the interests of efficient litigation and judicial economy, would help prevent undue prejudice to the City and Wilson, and would not affect Plaintiff's recovery of compensatory damages. In response, Plaintiff argues that bifurcation would be inconvenient and inefficient due to the overlap of evidence that is relevant to both the *Monell* claim and the individual defendants, that the City's concerns about prejudice are premature and unfounded, and that Plaintiff is pursuing the *Monell* claim for non-economic benefits beyond compensatory damages, such as deterring future violations of citizens' constitutional rights.

##### 1.  Efficiency and Judicial Economy

As courts in this Circuit have recognized, the bifurcation of *Monell* claims "is generally likely to bring about an earlier disposition of the suit because bifurcation allows a bypass of discovery relating to the *Monell* claim, which can add significant, and possibly unnecessary, time, effort, cost, and complications to the discovery process." *Lopez v. City of Chicago*, 2002 WL 335346, at *2 (N.D. Ill. Mar. 1, 2002). The Court finds that these considerations also weigh in favor of staying Plaintiff's *Monell* claim against the City.

A stay of the *Monell* claim would allow the parties to more quickly reach the merits of Plaintiff's claims against Defendant Walker. These claims focus on "the specific incident" that occurred on September 7, 2013. *Medina*, 100 F. Supp. 2d at 894. By contrast, the *Monell* claim against the City "obviously entails elements of proof that are not involved when the plaintiff sues only the officers claimed to have been directly involved in the deprivation of his rights" and covers a significant time period leading up to the date of the shooting. *Id.* Although Plaintiff has attempted to narrow his *Monell* claims, Plaintiff still seeks documents from a nine-year period (2007 to the present) on all shootings of criminal suspects by Chicago police officers. The City explains that, in order to defend itself from the *Monell* claims, it would need to produce its full investigative files for all shootings, which would "put[] at issue 400 police-involved shooting investigative files created since 2007." [137] at 2. The City estimates that each file is approximately 750 pages, that it would need to produce an estimated 375,000 pages of documents to respond to Plaintiff's discovery requests, and that it would take its Independent Police Review Authority ("IPRA") approximately 15,000 hours to review these documents. [137] at 3. Even if the City's estimates are exaggerated, there is no question that Plaintiff's requests would place a heavy financial and administrative burden on the City.

In addition, the trial of Plaintiff's individual claims against Defendant Walker would be longer and more legally and factually complex if the *Monell* claim is not bifurcated. Although the parties have not estimated the number of additional trial days that would be needed for the *Monell* claim, it undoubtedly would take a significant amount of time to present evidence concerning the City policies and practices that allegedly led to Defendant Walker violating Horton's constitutional rights. On balance, therefore, the Court finds that bifurcation of the

*Monell* claim for discovery and trial would "promote judicial economy." *Chlopek*, 499 F.3d at 700.

A stay of the *Monell* claim until after the claims against Wilson are resolved may also avoid the need for *Monell* discovery. If Plaintiff prevails on his claims against Defendant Walker, then the City's Limited Consent to Entry of Judgment would, as a practical matter, allow Plaintiff to collect judgment from the City without going to the time and expense of litigating the *Monell* claim. Plaintiff "seeks only monetary relief" and the City has stipulated that it will "indemnify [Walker] for compensatory damages as well as an award of attorney's fees and costs." *Id.* See also [101-2] at 3. Under such circumstances, the Seventh Circuit has observed that bifurcation of *Monell* claims is "sensible," especially "in light of the volume of civil-rights litigation that district courts must manage." *Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015).

Both parties recognize that Plaintiff could proceed with his *Monell* claims against the City if he prevails on his constitutional claims against Wilson. But the parties disagree about whether bifurcation would avoid—as opposed to merely delay—discovery on the *Monell* claim (Count X) in the event that Plaintiff fails to establish that Wilson violated Horton's constitutional rights. The City argues that bifurcation would allow it to "avoid burdensome and potentially unnecessary discovery and litigation costs should Plaintiff fail to establish a constitutional violation and thus, as a matter of law, be unable to prove any *Monell* violation." [101] at 4. Plaintiff responds that even if the fact-finder determined that the individual defendants are not liable, Plaintiff still might succeed on his *Monell* claim against the City. Specifically, Plaintiff argues that "where—like here—Defendant Officers have asserted an affirmative defense such

that a jury may find a constitutional violation but decline to find the officers liability, Plaintiff may still obtain a liability finding against the City." [113] at 8.

The Seventh Circuit has acknowledged that "a city's liability is derivative of its police officer's liability," such that "a municipality's liability for a constitutional injury 'requires a finding that the individual officers are liable on the underlying substantive claim.'" *Treece*, 213 F.3d at 364 (citations omitted). Nonetheless, the Seventh Circuit has also recognized that "a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). "[T]o determine whether the [City]'s liability is dependent on its officers, we look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id*. Here, Plaintiff's *Monell* claim against the City alleges that the City *encouraged* Wilson's excessive use of force by failing to investigate or discipline officers who use excessive force and shoot civilians. A jury could not consistently find that Walker did not use excessive force but that the City's policies encouraged Walker's use of excessive force. However, a jury could consistently find that Walker did use excessive force, but that he was entitled to qualified immunity and therefore not liable for his actions. If that were to occur, and Plaintiff decided to proceed with the *Monell* claim against the City, then Plaintiff would, hypothetically, still need to conduct *Monell* discovery. But here, the City has consented to entry of judgment against it in the event that the trier of fact finds that Defendant Walker violated Horton's constitutional rights but is, nonetheless, "not liable to Plaintiff because he is entitled to qualified immunity." [101-2] at 3-4. Thus, on balance, the Court finds that bifurcating the *Monell* claim against the City would promote the goals of efficiency and judicial economy.

### 2. Prejudice to the City and Defendant Walker

The City argues that bifurcation is also warranted because trying the *Monell* claim along with the excessive force claim against Defendant Walker will prejudice both Walker and the City. The City asserts that it would be prejudiced because "[a] jury that finds liability against the individual officer may incorrectly and unfairly find that the City should be liable under *Monell* and its progeny, misconstruing evidence or the complicated law around *Monell*." [101] at 9. Defendant Walker allegedly would also be prejudiced by "the introduction at trial of extensive evidence" against the City that is not relevant to Plaintiff's conduct on September 7, 2013. *Id.*

While the City's argument has surface appeal, the Court finds that it is premature to decide whether bifurcating the *Monell* claim is necessary to prevent prejudice to the City or to Defendant Walker at trial. The City's prejudice arguments, on their face, could "apply to virtually every case that involved both individual liability and *Monell* policy claims, because the nature of a *Monell* claim requires evidence that goes beyond the actions of the individual defendant." *Elrod v. City of Chicago*, 2007 WL 3241352, at *7 (N.D. Ill. Nov. 1, 2007). "Without knowing what the evidence is and the actual prejudice being faced, the Court cannot properly assess the potential for any undue prejudice" against Defendant Walker or the City by "having to present" their cases together. *Estate of McIntosh v. City of Chicago*, 2015 WL 5164080, at *9 (N.D. Ill. Sept. 2, 2015). Therefore, the Court finds that the avoidance of unfair prejudice would not, by itself, warrant bifurcation at this time.

### 3. Prejudice to Plaintiff

Since the City has established one of the criteria for bifurcation under Rule 42(b)—"to expedite and economize" the litigation—the Court may order bifurcation if "doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Chlopek*, 499 F.3d at 700.

Here, the Seventh Amendment—which grants a plaintiff in a civil case a right to a jury trial[2]—is not implicated because Plaintiff will still be able (if he chooses) to pursue his *Monell* claim against the City if the trier of fact finds that Defendant Wilson violated Horton's constitutional rights.

The remaining question, then, is whether bifurcation would prejudice Plaintiff in other ways. The Court is not persuaded that it would. Plaintiff would benefit from bifurcation because his claims against Defendant Walker likely would reach trial sooner—and at much less expense in the form of attorneys' fees—than if they were joined with the *Monell* claim. Bifurcation also would not affect Plaintiff's recovery for compensatory damages. Through its "Limited Consent to Entry of Judgment," the City has consented to entry of judgment against it for compensatory damages and reasonable attorneys' fees in the event that the trier of fact finds that Wilson violated Horton's constitutional rights. This consent applies even if the trier of fact finds that Wilson violated Horton's constitutional rights but is nonetheless entitled to qualified immunity. "The City's submission of similar stipulations has been cited as justifying bifurcation orders in several cases." *Elrod*, 2007 WL 3241352 at *4.[3]

While not disputing the City's argument that bifurcation "will not affect Plaintiff's recovery for compensatory damages" ([113] at 6), Plaintiff argues that his *Monell* claim against the City also serves the valuable goal of deterring further constitutional violations by the City

---

[2] U.S. Const. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.").

[3] Although the City does not agree to indemnify Plaintiff for the award of punitive damages against Defendant Wilson, this is irrelevant to the prejudice analysis because "municipalities cannot be liable for punitive damages." *Cadiz v. Kruger*, 2007 WL 4293976, at *8 n.6 (N.D. Ill. Nov. 29, 2007). See also *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983.").

and its officers. The Court recognizes that the potential to deter future official misconduct is "a proper object of our system of tort liability." *King v. Evans*, 2015 WL 4397761, at *2 (N.D. Ill. July 17, 2015) (quotation marks and citation omitted). Nonetheless, since the City has stipulated that it will pay any judgment against Defendant Wilson, a judgment against Wilson could have a similar deterrent effect on City policies and procedures that promote similar misconduct. See *Castillo*, 2012 WL 1658350 at *6.[4]

For these reasons, the Court finds that bifurcating the *Monell* claim against the City (Count IX) for purposes of discovery and trial is warranted under Rule 42(b). The City's motion [101] is granted.

### B. CHA's Partial Joinder In the City's Motion to Bifurcate

In his *Monell* claim against CHA (Count X), Plaintiff alleges that CHA's failure to adequately investigate, train, monitor, and discipline security guards, security guard companies, and property management companies who provide services at CHA properties encouraged the misconduct committed by Defendants Walker, Moore, Maverick, and H.J. Russell. CHA filed a partial joinder [109] in the City's motion to bifurcate [101]. CHA asserts that bifurcation of the *Monell* claim will best serve the interests of efficiency and judicial economy and will help prevent undue prejudice to CHA and the other Defendants. CHA does not, however, join in the City's Limited Consent to Entry of Judgment. CHA maintains that neither Defendant Walker nor Defendant Moore was acting as an agent of CHA and that CHA is not liable in any way for the actions of Walker or Moore on September 7, 2013. Plaintiff responds that the Court should

---

[4] In regard to the potential non-monetary consequences of Plaintiff's desire to take *Monell*-related discovery relating to shootings by Chicago Police Department ("CPD") Officers, the Court notes that last month the United States Department of Justice opened what it called a "pattern or practice" investigation into the CPD that likely will examine some, if not all, of the same activity. See Press Release, Justice Department Opens Pattern or Practice Investigation into the Chicago Police Department (U.S. Dep't of Justice, Office of Public Affairs, Dec. 7, 2015), http://www.justice.gov/opa/pr/justice-department-opens-pattern-or-practice-investigation-chicago-police-department.

deny bifurcation of the *Monell* claim against CHA for the same reasons it should deny bifurcation of the *Monell* claim against the City.  In addition, Plaintiff argues that because CHA has not submitted a consent to judgment, CHA would be able to argue that Walker and Moore were not its agents "and in such case Plaintiff would be denied recovery from CHA * * *, including the possibility of recovering punitive damages from entities who can afford to pay them," and would have to have a second trial to establish CHA's liability.  [113] at 10.

The Court finds that bifurcating the *Monell* claim against CHA (Count X) for purposes of discovery and trial would promote efficiency and judicial economy.  A stay of the *Monell* claim against CHA would allow the parties to more quickly reach the merits of Plaintiff's non-*Monell* claims, which focus on the events of September 7, 2013.  Although the parties disagree on how burdensome it would be for CHA to respond to *Monell* discovery, the Court finds that trying the *Monell* claim with the other claims would greatly increase the scope of discovery and the burden on CHA.  Plaintiff's *Monell* claim against CHA is very broad, alleging that CHA failed to adequately investigate, train, monitor, or discipline security guards, security guard companies, and property management companies who provide services at CHA properties.  CHA states that it would cost up to $22,750 to hire a third-party vendor to prepare and produce documents that Plaintiff has requested on his *Monell* claim so far, and that this cost does not include attorneys' fees and costs associated with reviewing, redacting, and producing the documents, or the cost of fact and expert discovery on the *Monell* claim.  CHA asked Plaintiff if he would pay half of the cost of hiring the third-party vendor but Plaintiff has not agreed to do so.  The financial and administrative burden it would impose on CHA to respond to *Monell* discovery is significant, especially given CHA's purpose to provide affordable housing to low-income City residents.

13

The Court also finds that, on balance, bifurcation of the *Monell* claim against CHA would not prejudice Plaintiff. The Court recognizes that because CHA has not consented to entry of judgment against it, in the event that Defendant Moore or Defendant Walker is found to have violated Horton's constitutional rights, Plaintiff still would need *Monell* discovery and potentially a second trial to obtain compensation from CHA for these violations. However, since the City has already consented to pay the potential judgment against Defendant Walker, CHA's refusal to consent to pay a judgment against Walker has no effect on Plaintiff's ability to recover damages. Neither the City nor CHA has agreed to pay the judgment that might be awarded against Moore. Nonetheless, to the extent that Moore is found to be an employee of CHA or the City, Illinois law would require the applicable "local public entity * * * to pay any tort judgment or settlement for compensatory damages * * * for which [Moore] while acting within the scope of h[er] employment is liable." 745 Ill. Comp. Stat. Ann. 10/9-102.[5] "[T]he CHA, as a municipal corporation, is a 'local public entity'" that is subject to this requirement. *Barnes v. Chicago Hous. Auth.*, 761 N.E.2d 283, 288 (Ill. App. 2001). Plaintiff also expresses concern that, without a consent to judgment from CHA, Plaintiff may be unable to recover "punitive damages from entities who can afford to pay them." [113] at 10. But Plaintiff would not be entitled to collect punitive damages against CHA in any event because CHA is a municipal corporation and therefore not subject to punitive damages. See *City of Newport*, 543 U.S. at 271;

---

[5] The term "local public entity" includes "a county, township, municipality, municipal corporation, school district, school board, educational service region, regional board of school trustees, trustees of schools of townships, treasurers of schools of townships, community college district, community college board, forest preserve district, park district, fire protection district, sanitary district, museum district, emergency telephone system board, and all other local governmental bodies" and "also includes library systems and any intergovernmental agency or similar entity formed pursuant to the Constitution of the State of Illinois or the Intergovernmental Cooperation Act as well as any not-for-profit corporation organized for the purpose of conducting public business." 745 Ill. Comp. Stat. Ann. 10/1-206.

*Crump v. Chicago Hous. Auth.*, 1998 WL 164869, at *5 (N.D. Ill. Apr. 2, 1998) (dismissing plaintiff's claim against CHA for punitive damages because "the CHA is a municipal corporation under 310 ILCS 10/1 et seq.").

For these reasons, the Court finds that bifurcating the *Monell* claim against CHA (Count X) for purposes of discovery and trial is warranted under Rule 42(b). CHA's motion [109] is granted.

### C. H.J. Russell's Partial Joinder In the City's Motion to Bifurcate

H.J. Russell's partial joinder [108] is denied as moot because Plaintiff's governing complaint [128] no longer includes a *Monell* claim against H.J. Russell. See [145] at 1 (Plaintiff's status report explaining that in his Fourth Amended Complaint he "has dropped his *Monell* claims against Defendants Maverick Security and H.J. Russell").

## IV. Conclusion

The Court concludes that (1) the scope of *Monell* discovery and its associated burdens is significant, (2) there is a realistic possibility that staying trial on the *Monell* claims will avoid the need for a trial on these claims altogether, and (3) none of the parties would be meaningfully prejudiced by a separate trial on these claims. For these reasons, the Court grants the City of Chicago's motion [101] and the Chicago Housing Authority's partial joinder [109]. Discovery and trial on Plaintiff's *Monell* claims (Counts IX and X) are stayed until the other claims are resolved. The Court enters the City's proposed "Limited Consent to Entry of Judgment Against Defendant City of Chicago." H.J. Russell's partial joinder [108] is denied as moot.

Dated: January 26, 2016

_____
Robert M. Dow, Jr.
United States District Judge