# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JARROD HORTON, as Independent Administrator of the Estate of MARLON HORTON, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 13-cv-6865 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| The CITY OF CHICAGO, a municipal corporation, CHICAGO POLICE OFFICER KENNETH F. WALKER, Star No. 9191, SHAQUILA R. MOORE, The CHICAGO HOUSING AUTHORITY, H.J. RUSSELL & COMPANY, and MAVERICK SECURITY, INC., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) the motion [146] of Defendants Maverick Security, Inc. ("Maverick") and Shaquila R. Moore ("Moore") to dismiss Counts VI, VII, VIII, and XII of Plaintiff's Fourth Amended Complaint; (2) Maverick's motion [153] to dismiss Count II of the cross-claim for contribution filed by the Chicago Housing Authority ("CHA"); and (3) Maverick's motion [155] to dismiss Counts II through V of the cross-claims for contribution and indemnification filed by H.J. Russell & Company ("H.J. Russell"). For the reasons set forth below, the Court grants in part and denies in part Maverick and Moore's motion [146] to dismiss Counts VI, VII, VIII, and XII of Plaintiff's Fourth Amended Complaint. Count V of the Fourth Amended Complaint is dismissed without prejudice as to Maverick only. Count VII of the Fourth Amended Complaint is dismissed with prejudice as to Maverick only. Plaintiff's demands for punitive damages and attorney fees are stricken from Counts VII (battery), VIII

(negligent supervision), and XII (respondeat superior) of the Fourth Amended Complaint. The motion [146] is denied in all other respects. The Court also denies Maverick's motion [153] to dismiss Count II of CHA's cross-claim for contribution and its motion [155] to dismiss Counts II through V of H.J. Russell's cross-claims for contribution and indemnification.

**I.     Background[1]**

This lawsuit arises from an incident on September 7, 2013 in which Marlon Horton ("Horton") was fatally shot on the grounds of a CHA residential building located at 1815 W. Monroe St. in Chicago (the "Property"). The lawsuit is brought by Horton's surviving brother, Jarrod Horton ("Plaintiff"), as Independent Administrator of Horton's estate.

Plaintiff alleges that on September 7, 2013, Horton was in a CHA residential building located on the Property. At that time, Moore and Kenneth Walker ("Walker") were working on the Property as security guards. Moore and Walker were jointly employed by CHA, Maverick, and H.J. Russell. Walker was also employed as a police officer by the City of Chicago ("City"). Walker and Moore asked Horton to leave the residential building. Horton left the building. Walker, with the aid and support of Moore, then shot Horton with a firearm. 911 was called. The 911 operator directed Moore and Walker to provide medical care to Horton by applying a clean sheet to his wound and applying pressure. Walker and Moore did not follow this instruction and did not provide medical care to Horton. Horton died from his injuries on the same day.

Plaintiff filed the instant lawsuit against Walker, Moore, the City, CHA, Maverick, and H.J. Russell. Plaintiff's governing Fourth Amended Complaint [128] contains the following claims: a Section 1983 claim against Walker for excessive force (Count I); a Section 1983 claim

---

[1] For purposes of this order, the Court assumes as true all well-pled allegations of Plaintiff's Fourth Amended Complaint [128], CHA's cross-claim for contribution [125], and H.J. Russell's cross-claims for contribution and indemnification [130].

2

against Moore for failure to intervene (Count II); a Section 1983 claim against Walker and Moore for failure to provide medical care (Count III); a Section 1983 claim against Walker and Moore for conspiracy (Count IV); state law claims for intentional infliction of emotion distress ("IIED") claim (Count V), wrongful death under Illinois' Wrongful Death Act, 740 ILCS 180/0.01 *et seq.* (Count VI), and battery (Count VII), which are based on the alleged actions of Walker and Moore and pray for relief against "Defendants" generally; a claim against H.J. Russell and Maverick for negligent supervision (Count VIII); a *Monell* claim against the City based on its alleged failure to adequately investigate and discipline its officers who have been involved in shootings of civilians (Count IX); a *Monell* claim against CHA based on its alleged failure to adequately investigate, train, monitor, and discipline security guards, security guard companies, and property management companies who provide services at CHA properties (Count X); a claim against the City and CHA for indemnification (Count XI); and a respondeat superior claim against the City, CHA, H.J. Russell, and Maverick for the torts committed by their alleged agents, Walker and Moore (Count XII).

On September 23, 2015, CHA filed a cross-claim for contribution against Maverick. [125] at 3-4. CHA alleges that Maverick and H.J. Russell are parties to a 2011 subcontract agreement ("Subcontract Agreement"), under which H.J. Russell subcontracted with Maverick to provide services for the Property. According to CHA, Maverick was responsible under the Subcontract Agreement for complying with all applicable laws and providing proper security services for the Property, including professional and qualified on-site personnel. See [125] at 3-4; [125-1] at 2-8. CHA asserts that, if it is found liable to Plaintiff under any theory of recovery, it is entitled to contribution from Maverick under Illinois' Joint Tortfeasors Contribution Act, 740 ILCS 100/0.01 *et seq*. See [125] at 3-4.

3

On October 9, 2015, H.J. Russell filed cross-claims for contribution and indemnification against CHA (Count I) and Maverick (Counts II through IV). See [130] at 3-11. H.J. Russell alleges that the Subcontract Agreement, signed February 1, 2011, required Maverick to provide grounds security and two uniformed security officers at the Property and to indemnify and hold H.J. Russell harmless for claims relating to the execution of security services. [130] at 3-4. On January 1, 2013, H.J. Russell alleges, it entered into a letter agreement ("Letter Agreement") with Maverick, in which Maverick agreed to continue providing security services at the Property. [130] at 4. H.J. Russell further alleges that, on December 31, 2014, it entered into another written agreement with Maverick (the "Service Agreement"), which acknowledged and reaffirmed that the Service Agreement's indemnification and insurance requirements were intended to apply to and govern all periods that Maverick has provided services to the Property, including periods prior to when the Service Agreement was signed. [130] at 4. In Count II of its cross-claims, H.J. Russell alleges that Maverick is liable for contribution under Illinois' Joint Tortfeasors Contribution Act, 740 ILCS 100/0.01 *et seq*., to the extent that H.J. Russell is found liable to Plaintiff under any theory. In Counts III and IV, H.J. Russell asserts claims for express indemnification under the Subcontract Agreement and the Service Agreement, respectively. Finally, Count V alleges a claim for implied indemnification.

On October 20, 2015, Maverick moved to dismiss Counts V, VII, VIII, and XII of Plaintiff's Fourth Amended Complaint. See [146]. On October 30, 2015, Maverick filed motions to dismiss H.J. Russell's and CHA's cross-claims. See [153], [155]. Those motions have been fully briefed. See [159], [160], [164], [165], [166], [168].

4

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint (or cross-claim) first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant (or cross-defendant) is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); see also *Canadian Pac. Ry. Ltd. v. Leeco Steel, LLC*, 2015 WL 1840939, at *3 (N.D. Ill. Apr. 16, 2015) (recognizing that "a crossclaim must stand on its own" and is subject to dismissal under Rule 12(b)(6)). Second, the factual allegations in the complaint (or cross-claim) must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint" (or cross-claim) "however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. The Court reads and assesses the plausibility of a party's complaint (or cross-claims) as a whole. See *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011).

### III. Analysis

#### A. Maverick and Moore's Motion to Dismiss Counts V, VII, VIII, and XII of Plaintiff's Fourth Amended Complaint [146]

##### 1. Illinois Survival Act

Defendants Maverick and Moore argue that Count V of the Fourth Amended Complaint (IIED) must be dismissed because Plaintiff failed to bring that claim under the Illinois Survival Act, 755 ILCS 5/27-6, and is now time-barred from doing so. [146] at 4. Defendants also argue that Counts VII (battery), VIII (negligent supervision), and XII (respondeat superior) should be dismissed for the same reason, to the extent that they "relate to the decedent's alleged injuries prior to his death." [146] at 5.

Plaintiff responds that "there is no separate and independent Survival Act claim," and that if Horton has a tort claim that survived his death under the Survival Act, then Plaintiff—as the representative of Horton's estate—had a right to bring those claims within the time that Horton could have brought them or one year after Horton's death, whichever was later. [159] at 2; see also [128] at 2, ¶ 5. According to Plaintiff, Counts V, VII, VIII and XII all survived Horton's death and are cognizable under the Survival Act because they all seek to "'recover damages for an injury to the person.'" [159] at 2 (quoting 735 ILCS 5/13-209(a)(1)). Plaintiff further explains that these claims were all timely filed because he alleged them in his Third Amended Complaint (filed November 13, 2014) within the time that Horton would have had to bring them (which the parties agree is two years from his September 7, 2013 shooting, or September 7, 2015). See [159] at 2-3; see also [88].

The Court concludes that Counts V, VII, VIII, and XII of the Fourth Amended Complaint are not subject to dismissal under Rule 12(b)(6). Plaintiff is correct that "[t]he Survival Act does not create a statutory cause of action and instead allows a representative of the decedent to

maintain those statutory or common-law actions that had already accrued to the decedent prior to the decedent's death." *Myers v. Heritage Enterprises, Inc.*, 773 N.E.2d 767, 769 (Ill. App. 2002). Therefore, Plaintiff could not have filed free-standing claims under the Survival Act. Although Counts V, VII, VIII, and XII of the Fourth Amended Complaint do not expressly allege that they are being brought under the Survival Act, this is not fatal because the Seventh Circuit "has repeatedly held that pleaders in a notice system do not have any obligation to plead legal theories." *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427 (7th Cir. 2005). Instead, in deciding a 12(b)(6) motion to dismiss, "[t]he real question [is] whether relief [is] possible under any legal theory * * * under any set of facts that could be established consistent with the allegations." *Id.* at 428. Defendants do not argue that Counts VII, VIII, and XII of the Fourth Amended Complaint are deficient under this standard, conceding Plaintiff's argument that Counts VII, VIII and XII are cognizable under the Survival Act. See [159] at 3.

As to Count V, for IIED, Defendants Maverick and Moore argue that an IIED claim does not survive the decedent's death and, therefore, cannot be brought under the Survival Act, because it is not an "action[] to recover damages for an injury to the person." 755 ILCS 5/27-6. Defendants cite two district court cases from the early 1980s for the proposition that the damages available in an IIED suit do not qualify as "damages for injury to the person." *Id.*; see also [160] at 4 (citing *Hall v. Mercy Hosp. & Med. Ctr.*, 1986 WL 13206, at *1 (N.D. Ill. Nov. 14, 1986); *Jarvis v. Stone*, 517 F. Supp. 1173, 1176 (N.D. Ill. 1981)). However, the Seventh Circuit has subsequently recognized that while "[e]arly interpretations of the [Survival] Act held that only actions for physical damages, not emotional damages, survived death," "[c]ourts now view the act as a remedial statute that is to be construed liberally to avoid abatement." *Cleveland v. Rotman*, 297 F.3d 569, 574 (7th Cir. 2002) (citing *Owens v. Archer-Daniels-Midland Co.*, 30 F.

7

Supp. 2d 1082, 1084 (C.D. Ill. 1999)). Under this more liberal reading of the statute, both Illinois courts and district courts in the Seventh Circuit have allowed IIED claims to be brought under the Survival Act. See *Owens*, 30 F. Supp. 3d at 1084 ("Giving the language of the Survival Act its ordinary meaning, this court concludes that a cause of action for the intentional infliction of emotional distress is a cause of action 'to recover damages for an injury to the person' and is included under the Survival Act."); *Polk v. Dent*, 2015 WL 74185, at *4 (N.D. Ill. Jan. 5, 2015) (explaining that "courts in this district and in Illinois have more recently heard false imprisonment and intentional infliction of emotional distress claims brought by administrators pursuant to the Survival Act," and concluding that, "[i]n light of this shift in Illinois law, * * * we erred by dismissing Plaintiffs' intentional infliction of emotional distress and false imprisonment claims as not surviving death" (citing *Cobige v. City of Chi.,* 2009 WL 2413798, at *13 (N.D. Ill. Aug. 6, 2009); *Abiola v. Abubakar,* 2003 WL 22012220, at *1 (N.D. Ill. Aug. 25, 2003); *Luss v. Vill. of Forest Park,* 878 N.E.2d 1193, 1202 (Ill. App. 2007); *In re Estate of Lambie,* 2012 WL 7017620, at *3 (Ill. App. Mar. 8, 2012)); cf. *Cleveland*, 297 F.3d at 574 (explaining that "[g]iven that Illinois courts liberally construe the survival act, it's possible that an action for negligent infliction of emotional distress survives death," but "express[ing] no opinion on th[e] subject" due to finding that plaintiff "failed to state such a claim").

Finally, the Court concludes that Counts V, VII, VIII, and XII of the Fourth Amended Complaint were timely filed because the same claims were all included in Plaintiff's Third Amended Complaint, which was filed less than two years after Horton's death. See 735 ILCS 5/13-209(a)(1).[2]

---

[2] It is also possible that these claims could "relate back" to Plaintiff's original complaint and its filing date pursuant to Federal Rule of Civil Procedure 15(c)(1)(B), but the parties do not address this issue in their briefs.

## 2. Respondeat Superior

Maverick argues that Plaintiff's respondeat superior claim (Count XII) should be dismissed to the extent that it seeks to hold Maverick liable for its employees' violations of section 1983. [146] at 6. The Court concludes that this is not a basis for dismissal. However, the Court agrees with Maverick that the relationship between Count XII and certain other counts requires further evaluation.

In particular, Maverick argues that it should be dismissed from the IIED and battery counts (V and VII) because "[t]o allow Maverick to be a defendant in counts for respondeat superior and intentional infliction of emotional distress and battery would improperly allow a jury to assess Maverick's liability three times instead of once." [146] at 6. Plaintiff responds that Illinois law holds an employer both liable for its own negligence and vicariously liable for its employees' negligence committed in the scope of their employment, and therefore it has direct claims against Maverick for IIED and battery. [159] at 4-5 (citing *Vancura v. Katris*, 939 N.E.2d 328, 343 (Ill. 2010)).

The Court concludes that the battery claim (Count VII) should be dismissed with prejudice as to Maverick because Plaintiff does not allege any facts suggesting that Maverick is directly liable for the battery on Plaintiff. The Fourth Amended Complaint does not (and could not) allege that Maverick committed an "unauthorized touching" of Plaintiff, as required to state a claim for civil battery. *Fiala v. Bickford Sr. Living Grp., LLC*, 43 N.E.3d 1234, 1240 (Ill. App. 2015). Thus, the only basis for holding Maverick liable for battery is respondeat superior, which Plaintiff already alleges as a standalone claim. Plaintiff's citation to *Vancura* is inapposite because battery is based on intentional conduct, not negligence. *Id.* ("Battery is an intentional

tort."). For these reasons, the Court dismisses the battery claim (Count VII) against Maverick with prejudice.

The Court also dismisses, without prejudice, Plaintiff's IIED claim (Count V) as to Maverick only. The elements of an IIED claim are: "(1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant knew that severe emotional distress was certain or substantially certain to result from such conduct." *Johnson v. K mart Corp.*, 723 N.E.2d 1192, 1197 (Ill. App. 2000). The Court's review of Illinois case law indicates that an IIED claim may be brought directly against a company. See *id.* (IIED claim against Kmart brought by Kmart employees; summary judgment for Kmart appropriate due only to plaintiffs' failure to present evidence that they suffered severe emotional distress as a result of Kmart's use of private detectives to solicit highly personal information about employees). However, while Maverick could hypothetically be the defendant in an IIED case, the Fourth Amended Complaint does not allege that Maverick itself engaged in any extreme and outrageous conduct. See [128] at 5-6. It alleges only that Walker and Moore's conduct was extreme and outrageous. Thus, as currently plead, the only basis for an IIED claim against Maverick would be respondeat superior, which Plaintiff also alleged as a stand-alone claim. Therefore, the Court dismisses without prejudice Plaintiff's IIED claim as to Maverick only.

### 3. Punitive Damages and Attorneys' Fees

Defendants argue that Plaintiff is not entitled to punitive damages and attorneys' fees on Counts VII, VIII or XII because these claims are only cognizable under the Survival Act, which does not authorize the award of punitive damages or attorneys' fees. See [146] at 6-7. Plaintiff concedes this point. See [159] at 5 n.1. Therefore, the Court will strike Plaintiff's requests for

punitive damages and attorneys' fees from Counts VII, VIII, and XII of the Fourth Amended Complaint.

### B. Maverick's Motion to Dismiss Count II of CHA's Cross-Claims for Contribution [153]

Maverick argues that it and CHA have no joint liability in tort as required by Illinois' Joint Tortfeasor Contribution Act, 740 ILCS 100 *et seq.* ("Contribution Act"), because all of Plaintiff's claims against CHA are either statutory claims or claims for intentional torts, which are not covered by the Contribution Act. CHA agrees that the Contribution Act does not allow it to receive contribution from Maverick for intentional torts or most statutory claims, but asserts that it has a right to seek contribution for the following claims asserted against it: (1) the Wrongful Death Act claim, which could be based on either negligent or intentional conduct; (2) Plaintiff's respondeat superior claim, which according to CHA, attempts to hold it liable for Maverick's negligent actions and failures to act; and (3) Plaintiff's Section 1983 *Monell* claim (Count X).

"The purpose of the Contribution Act is to balance the equities between all culpable parties while ensuring that plaintiffs do not receive double recovery." *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 783 (7th Cir. 2008). It provides that, "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a). According to the Seventh Circuit, "the Supreme Court of Illinois has construed 'liability in tort' to mean 'potential' tort liability, and the Illinois courts have construed broadly this 'potential liability' criterion." *Sompo*, 522 F.3d at 783. "Illinois courts determine potential tort liability 'at the time of the injury to the plaintiff,' not when the basis for liability is actually decided by the court." *Id.*

11

While Maverick and CHA agree that battery and IIED are intentional torts that are not covered by the Contribution Act,[3] they disagree about how the Wrongful Death Act claim should be characterized. Maverick asserts that wrongful death is an intentional tort, [168] at 5, while CHA asserts that wrongful death is not an intentional tort and implies that a wrongful death claim may be based on either intentional or negligent conduct, [164] at 6. Neither party cites any legal authority for its position, but this Court previously recognized that "[t]he Illinois Wrongful Death Act permits a plaintiff to bring a claim where a person's death is caused by wrongful act, *neglect* or default." *Horton v. City of Chicago*, 2014 WL 5473576, at *5 (N.D. Ill. Oct. 29, 2014) (citing 740 ILCS 180/1) (emphasis added); see also *Wilson v. City of Chicago*, 758 F.3d 875, 879 (7th Cir. 2014). Therefore, Plaintiff could establish CHA's liability under the Wrongful Death Act without establishing that CHA engaged in intentional tortious conduct, and Maverick could also be liable to CHA under the Contribution Act. Cf. *Glen Ellyn Pharmacy, Inc. v. Meda Pharm., Inc.*, 2011 WL 6156800, at *4 (N.D. Ill. Dec. 9, 2011) ("Because Glen Ellyn could establish Hal Lewis's liability under the Fraud Act without having to establish that Hal Lewis intentionally deceived Glen Ellyn, SKA could also be liable to Hal Lewis under the Contribution Act. The motion to dismiss on this basis must be denied.").

Since Maverick is the moving party, it was its burden to demonstrate that it would be impossible for CHA to obtain relief against it under the Contribution Act under any set of facts that could be established consistent with the allegations of the Fourth Amended Complaint.

---

[3] See *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 538 N.E.2d 530, 542 (Ill. 1989); see also *Appley v. W.*, 929 F.2d 1176, 1180 (7th Cir. 1991).

*McDonald*, 425 F.3d at 427; see also *Zic v. Italian Gov't Travel Office*, 130 F. Supp. 2d 991, 999 (N.D. Ill. 2001). Maverick has not met this burden and its motion must, therefore, be denied.[4]

### C. Maverick's Motion to Dismiss Counts II through V of H.J. Russell Company's Cross-Claims for Contribution and Indemnification [155]

#### 1. Express Indemnification

Maverick argues that the Counts III and IV of H.J. Russell's cross-claims for express indemnification under the Subcontract Agreement and Service Agreement must be dismissed because on the date of Horton's shooting—September 7, 2013—Maverick and H.J. Russell were operating under the Letter Agreement, which does not contain an indemnification clause. H.J. Russell responds that Maverick had a duty to indemnify it on the date of the shooting, because the Service Agreement, signed December 31, 2014, clarified in a recital that "the indemnification provisions referenced in Article 9 * * * were intended to apply and govern all periods that [Maverick] has provided Services to the Property," including past periods. [130-5] at 2; see also [165] at 6-7. Alternatively, Maverick argues, the indemnification provisions of the Subcontract Agreement remained in place on September 7, 2013 because the Letter Agreement simply clarified and provided more specificity as to the services that Maverick was to perform and left intact all the other provisions of the Subcontract Agreement. *Id.* at 7. In reply, Maverick argues that the above-quoted language from the Service Agreement does not provide H.J. Russell with a right to indemnification because the language is contained in the Service Agreement's recitals, rather than in the body of the contract.

---

[4] The Court finds it unnecessary and declines to resolve at this stage in the case the third issue raised by CHA: whether, under Illinois' Joint Tortfeasor Contribution Act, CHA could be entitled to contribution from Maverick for CHA's violation of Section 1983. The parties acknowledge that the Supreme Court and the Seventh Circuit have not resolved this issue and that there is a split of authority in the lower courts (though they disagree on the closeness of that split), and neither party cites any precedent from this district. See [153] at 5-7; [164] at 7-8. Leaving this issue for another day may provide the higher courts with an opportunity to address it first.

The Court concludes that it would be premature to dismiss Count III or Count IV of H.J. Russell's cross-claims. The parties appear to agree that the contracts at issue here are governed by Illinois law. Under Illinois law, "[i]f the terms of an alleged contract are ambiguous or capable of more than one interpretation," then "parol evidence is admissible to ascertain the parties' intent." *Quake Const., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990). Thus, "[i]f the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a circuit court cannot properly determine on a motion to dismiss." *Id.*; see also *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1104 (7th Cir. 1997) ("Under Illinois law, the interpretation of an unambiguous contract is a question of law, but ambiguities in the language of a contract regarding the parties' intent create a question of fact. If the contract is unambiguous, therefore, a breach of contract claim is susceptible to dismissal for failure to state a claim."). In addition, the trend in Illinois courts has "moved away from the 'four corners' rule of contract interpretation" and "toward a more liberal approach." *First Bank & Trust Co. of Illinois v. Vill. of Orland Hills*, 787 N.E.2d 300, 310 (Ill. App. 2003).

In this case, the Court cannot determine as a matter of law, based on the briefing provided by the parties, that the Service Agreement and the Subcontract Agreement do not require Maverick to indemnify H.J. Russell for damages arising from the September 7, 2013 shooting. At this point in the proceedings, it is not even clear to the Court which parties are bound by the Subcontract Agreement or whether the Letter Agreement was intended to replace the Subcontract Agreement. The Subcontract Agreement [130-3] has H.J. Russell's name at the top, but is "made" between and signed by Maverick ("Subcontractor") and Henry Horner/Westhaven Homes ("Contractor"), and defines rights and responsibilities of an unidentified "Vendor."

14

While the Letter Agreement purports to "supercede[] any previously dated agreement between" H.J. Russell and Maverick ([130-4] at 2), it is not clear whether this includes the Subcontract Agreement, since the parties to that agreement are never clearly identified. Additionally, the subject matter of the Letter Agreement is itself ambiguous, because it purports in places to be an agreement for "Scavenger Service" and in other places to be a contract for "Security services." [130-4] at 2.

As to the Service Agreement, the Court cannot resolve on the pleadings whether its recital concerning indemnification makes its substantive indemnification provision applicable to claims for damages arising out of the September 7, 2013 shooting. A contract "recital is merely an explanation of the circumstances surrounding the execution of the contract," and "is not a binding obligation unless referred to in the operative portion of the contract." *Regnery v. Meyers*, 679 N.E.2d 74, 78 (Ill. App. 1997). Nonetheless, a recital may "create a context through which the operational portion of the contract can be better understood, because [it] indicate[s] the relevant circumstances to its execution." *Hagene v. Derek Polling Const.*, 902 N.E.2d 1269, 1274 (Ill. App. 2009). Thus, "'[r]esort will be had to the recitals of a contract if necessary to determine the intention of the parties and of the operative provisions of the agreement.'" *Cress v. Recreation Servs., Inc.*, 795 N.E.2d 817, 838-39 (Ill. App. 2003) (quoting *In re Estate of Anderson*, 552 N.E.2d 429, 433 (Ill. App. 1990)).

The recital at issue here indicates that the parties intended the Service Agreement's indemnity provision (paragraph 9) to apply to services that were provided at the Property prior to the effective date of the Service Agreement. See [130-5] at 2, fifth "Whereas" clause. Paragraph 9 does not expressly limit the duration of Maverick's indemnification obligation; instead, it requires Maverick to provide indemnification to H.J. Russell and CHA "from every expense,

15

liability or payment arising out of or through injury * * * to any person or persons or damage to property * * * located in any place in which this Agreement is performed, which arises out of or is suffered through any act or omission of [Maverick], any subcontract of [Maverick], or anyone directly or indirectly employed by or under the supervision of any of them in the performance of the services contemplated by this Agreement." [130-5] at 5. The Subcontract Agreement's recitals could be relevant to "determine the intention of the parties" about the duration and scope of Maverick's indemnification obligation. *Cress*, 795 N.E. 2d at 838-89. For these reasons, the Court denies Maverick's motion to dismiss Counts III and IV of H.J. Russell's counterclaims.

### 2. Implied Indemnification

Maverick argues that Count V of H.J. Russell's counterclaims, for implied indemnification, must be dismissed because that claim is available "only in limited principal-agent situations where the principal's liability is vicariously imposed by law," and H.J. Russell's "exhibits show [that] Maverick was an independent contractor" of H.J. Russell, not an agent. [155] at 2.

Illinois courts recognize the theory of "implied indemnity based on quasi-contract priniciples," under which "a blameless party (the indemnitee) may be held derivatively liable to the plaintiff based upon that party's legal relationship with the one who actually caused the plaintiff's injury (the indemnitor)." *Kerschner v. Weiss & Co.*, 667 N.E.2d 1351, 1355 (Ill. App. 1996). "To state a cause of action for implied indemnity based upon quasi-contractual principles, a third-party complaint must allege (1) a pretort relationship between the third-party plaintiff and the third-party defendant, and (2) a qualitative distinction between the conduct of the third-party plaintiff and the third-party defendant." *Id.* at 1356. "Classic pretort relationships which have given rise to a duty to indemnity include lessor and lessee, employer and employee,

16

owner and his lessee, and master and servant." *Id.* (citations omitted; denying motion to dismiss where implied indemnity claim alleged a pre-tort, attorney-client relationship between third-party plaintiff and third-party defendant).

The Court concludes that H.J. Russell's pleadings are sufficient to state the existence of a pre-tort relationship between H.J. Russell and Maverick. H.J. Russell alleges that it had a pre-tort relationship with Maverick based on the Subcontract Agreement, wherein Maverick agreed to provide security services at the Property. See [130] at 11, ¶ 49. The Court is not convinced by Maverick's argument that Maverick is an independent contractor not subject to an implied indemnification claim, because (1) Maverick does not cite any case law establishing that an independent contractor relationship is always an insufficient "pretort relationship" for purposes of an implied indemnification claim; (2) Maverick does not quote or cite any contractual provisions that limit its relationship with H.J. Russell to an independent contractor relationship; and (3) even where there is "an agreement labeling [a] relationship as that of an independent contractor, the facts of the case can demonstrate an agency status." *Bruntjen v. Bethalto Pizza, LLC*, 18 N.E.3d 215, 240 (Ill. App. 2014) (explaining that the "[d]etermination of whether a relationship of employer and employee, principal and agent, or owner and independent contractor exists depends upon such facts as the manner of hiring, the right to discharge, the manner and direction of servants, the right to terminate the relationship, and the character of the supervision of the work done"); see also *Jackson v. Bank of New York*, 62 F. Supp. 3d 802, 814 (N.D. Ill. 2014) ("The determination of whether a particular entity is an 'agent' or an 'independent contractor' is a factually intensive one.").

### 3. Contribution

Maverick argues that Count II of H.J. Russell's counterclaims, for contribution under the Joint Tortfeasor Contribution Act, must be dismissed because Maverick has a pending motion to dismiss the state-law claims in Plaintiff's Fourth Amended Complaint and, even if those claims are not dismissed, they are not subject to a contribution action because they are claims for intentional torts.

The Court is not persuaded by either argument. The Court already denied Maverick's motion to dismiss Plaintiff's state-law claims. Even if it had granted the motion, Plaintiff's claims against H.J. Russell would still be viable (since H.J. Russell did not file its own motion to dismiss Plaintiff's state-law claims) and H.J. Russell would still be entitled to seek contribution from Maverick. Moreover, Plaintiff's claims against H.J. Russell are not all intentional torts for which contribution would be disallowed. Most obviously, Plaintiff alleges in his negligent supervision claim against H.J. Russell (Count VII), that H.J. Russell "breached its duty of care to Marlon Horton by failing to adequately supervise the operations of Maverick Security to provide security guard services at the Property." [128] at 7, ¶ 59. The Court finds it unnecessary to sort through the remainder of the state law claims at this time, since H.J. Russell has alleged a viable contribution claim.

## IV. Conclusion

For these reasons, the Court grants in part and denies in part Maverick and Moore's motion [146] to dismiss Counts VI, VII, VIII, and XII of Plaintiff's Fourth Amended Complaint. Count VII of the Fourth Amended Complaint is dismissed with prejudice as to Maverick only. Count V of the Fourth Amended Complaint is dismissed without prejudice as to Maverick only. Plaintiff's demands for punitive damages and attorney fees against Maverick are stricken from

Counts VII (battery), VIII (negligent supervision), and XII (respondeat superior) of the Fourth Amended Complaint. The motion [146] is denied in all other respects. Finally, the Court denies Maverick's motion [153] to dismiss Count II of CHA's cross-claim for contribution and its motion [155] to dismiss Counts II through V of H.J. Russell's cross-claims for contribution and indemnification.

Dated: September 15, 2016

_____
Robert M. Dow, Jr.
United States District Judge