UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JARROD HORTON )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CITY OF CHICAGO, et al. )<br>)<br>Defendants. ) | Case No. 13 CV 06865<br><br>Judge Robert M. Dow, Jr.<br><br>Magistrate Judge Valdez |

**PLAINTIFF'S MOTION TO RECONSIDER**

Plaintiff, by his undersigned counsel, pursuant to Fed. R. Civ. Pro. 59(e), respectfully moves this Court to reconsider its order entered September 30, 2018, granting Defendant Walker's motion for summary judgment on Plaintiff's excessive force claim on the basis of qualified immunity. In support of this motion, Plaintiff states as follows:

**INTRODUCTION**

On any given week in the City of Chicago, there are undoubtedly dozens of hostile encounters between police officers and unarmed civilians. Fortunately, most of these encounters do not end in the officer's shooting of the unarmed individual, perhaps because the Supreme Court more than 30 years ago, in *Tennessee v. Garner*, 471

U.S. 1, 11 (1985), tried to put a stop to such police shootings by holding that "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead."

Marlon Horton was one such unarmed individual, who although drunk and eventually aggressive, was doing nothing worse than urinating in public when Defendant Kenneth Walker, apparently undeterred by *Garner* and 25 years of precedent decided thereunder, decided to attack and eventually shoot Mr. Horton, killing him almost instantly.

On these facts, this Court decided that Officer Walker should not be held to account for his actions, finding that it was not clearly established in 2013 that Officer Walker's actions constituted excessive force. Plaintiff respectfully submits that this Court erred in finding that Officer Walker is entitled to qualified immunity. This Court concluded that "Plaintiff has not identified—and the court has not found—any controlling case law with even remotely similar facts in which a defendant was found to have used excessive force by shooting." (Op. at p. 23). Plaintiff respectfully submits that this is not the sole standard for determining qualified immunity, and that the Court therefore erred in so holding. This law is clear that, in the Fourth Amendment context, the plaintiff need not point to factually similar cases to avoid a finding of qualified immunity. Rather, the plaintiff can defeat the defense of qualified immunity by showing "'that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment.'" *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015) (quoting *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013)).

In this case, under the principles established by *Gardner* and its progeny, in September 2013, Officer Walker was on notice that his use of deadly force against an unarmed individual who was not committing a violent crime, who did not threaten anyone at the scene (other than, allegedly, Officers Walker and Moore), and who could have easily been subdued had either officer Walker or Moore followed their training and dialed 9-1-1 to obtain police assistance. In short, Officer Walker's killing of Mr. Horton was plainly excessive under the well settled law in place at the time of the shooting, and he is therefore not entitled to the defense of qualified immunity. Accordingly, Plaintiff respectfully requests that this Court vacate its order of summary judgment in Officer Walker's favor on the issue of qualified immunity and require him to stand trial for his actions.

## LEGAL STANDARD

Fed. R. Civ. Pro. 59(e) permits a party to move for reconsideration and relief from a judgment within 28 days of entry of the order in question. Motions to reconsider may be entertained where a court has made a manifest error of law or fact. *See*, *e.g.*, *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). Here, Plaintiff respectfully submits that this Court made a manifest error of law on the issue of qualified immunity, necessitating a reconsideration of its decision.

**ARGUMENT**

This Court found that Officer Walker was immune for his actions, despite the existence of the following undisputed facts, most of which are acknowledged in the Court's opinion:

1. Horton was compliant when Walker and Moore initially confronted him;

2. Horton was not committing a violent crime or a felony and was doing nothing worse than urinating in public when Walker attacked him;

3. Officer Walker initiated the physical aggression;

4. Walker and Moore were aware that Horton was unarmed;

5. Walker was not wearing his uniform at the time of the shooting, in violation of Maverick's rules and regulations;

6. Walker and Moore were both trained to contact the Chicago Police Department if they needed assistance;

7. Even though they had ample time to do so, nether Walker and Moore made no effort to call for assistance;

8. Several individuals passed by the scene as it unfolded, and Walker and Moore admit that Horton did not threaten any of these bystanders, nor does the video show any apparent fear by any of the bystanders;

9. Independent witness Stange testified that she did not see Mr. Horton reach for Walker's weapon—in fact she acknowledged that they were too far apart for him to do so;

10. Independent witness Joe Powell said that at one point that Horton was walking away from Walker and Moore;

11. The encounter lasted for several minutes and was in bright sunlight and out in the open; this was not a case involving a nighttime encounter, a sudden lunge from a hiding place, or an enclosed space; and

12. Walker's claim that he was concerned for Moore's safety because Horton allegedly jumped on her was based on an off-camera incident that was not

4

even mentioned by Walker in the police report, and Moore acknowledged that she did not recall Horton ever jumping on her.

In the face of these undisputed facts, this Court relied on only three facts to support its conclusion that Walker is entitled to qualified immunity:

1. Horton pursued Walker and Moore at close distance while they had their guns drawn and were telling him to stand back;

2. That there was "some sort of struggle" that led to Walker falling on the ground and when Moore intervened Horton pulled some of her hair out; and

3. Horton was threatening and used profanity.

These are the sole facts on which this Court relied in determining that Walker was entitled to summary judgment on his defense of qualified immunity. In so holding, this Court adopted a much too narrow view of the nature of qualified immunity. This Court's opinion states that "Plaintiff has not identified—and the court has not found—any controlling case law with even remotely similar facts in which a defendant was found to have used excessive force by shooting," (Op. at p. 23). This does not accurately state the law of qualified immunity. The Supreme Court has made it clear that the doctrine of qualified immunity exists to protect public officials from being held liable for "violating 'extremely abstract rights.'" *Ziglar v. Abbasi*, ___U.S.___, 137 S. Ct. 1843, 1866 (quoting *Anderson v. Creighton,* 483 U.S. 635,639 (1987)). However, the law is also clear that the level of particularity the plaintiff must show does not require a case directly on point in order to defeat qualified immunity. S*ee, e.g., Thompson v. Cope*, Nos. 17-3060, 18-1223, 2018 U.S. App. LEXIS 22480, at *13 (7th Cir. Aug. 14, 2018) ("Precedent tied to particularized facts can indicate that law is clearly established, but the Supreme

5

Court does 'not require a case directly on point.'") (citations omitted). In fact, the Seventh Circuit has noted that "[t]he presence of a controlling precedent is not, however, a *sine qua non* of a finding that a particular right has been clearly established . . . . In the absence of a controlling precedent we look to all relevant caselaw in an effort to determine whether at the time of the alleged acts a sufficient consensus had been reached indicating that the official's conduct was unlawful. To state the proposition in another way, we seek to determine whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time. This approach makes eminent sense for it precludes an official from escaping liability for unlawful conduct due to the fortuity that a court in a particular jurisdiction had not yet had the opportunity to address the issue." *Cleveland-Perdue v. Brutsche*, 881 F.2d 427 (7th Cir. 1989). As another Seventh Circuit decision notes, [a]s we [have] recognized . . . '[t]he easiest cases don't even arise. There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune . . . because no previous case had found liability in those circumstances.'" *McDonald v. Haskins*, 966 F.2d 292, 295 (7th Cir. 1992) (citations omitted).

Put another way, and as noted in *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015) (which Plaintiff cited in his summary judgment response memorandum), even without a case directly on point, the plaintiff can defeat qualified immunity in an excessive force case where he can show "'that the force was so plainly excessive that, as

6

an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment.'" *Id.* at 450 (quoting *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013)).

Here, beginning with *Garner*, which was decided more than 25 years before Officer Walker killed Mr. Horton, the "clear trend in the case law" was decidedly moving toward limiting police officers' rights to shoot unarmed individuals, as well as limiting what circumstances can be considered dangerous in order to justify the use of such deadly force. Subsequent case law applying *Garner* to the myriad of unique factual scenarios that arise in the context of citizen-police encounters has held that the plainly excessive uses of force, even involving potentially armed and dangerous suspects, do not give police officers a blank check to use deadly force. Several of these cases were cited in Plaintiff's summary judgment memorandum. *See*, e.g., *Coleman v. Wiencek*, No. 08 C 5275, 2010 U.S. Dist. LEXIS 36907 (N.D. Ill. Apr. 13, 2010); *Palmquist v. Selvik*, 91 C 0973, 1992 U.S. Dist. LEXIS 15639 (N.D. Ill. Oct. 4, 1992).

Additionally, case law from outside of this circuit established, prior to September 2013, and following *Garner*, that Officer Walker's conduct was plainly excessive. For example, in *Bouggess v. Mattingly*, 482 F.3d 886 (6th Cir. 2007), decided six years before the deadly shooting in this case, the Sixth Circuit rejected a qualified immunity defense in a case involving deadly force. In that case, a police officer conducting a drug sting operation had encounters with a number of suspected drug dealers during the operation, including the decedent, who never showed a weapon but whom the officer believed to have been armed. After one of the suspects reached into the officer's squad

7

car and grabbed some of the cash lying on the front seat, the officer got out of the car to chase the suspects, but (like Walker and Moore) he did not radio for help or advise any of his fellow officers that he believed the plaintiff was armed. The officer then saw the decedent bend down to pick up some of the money, and at that point a struggle ensued, and guns were drawn. The decedent then broke free and ran from the officer toward several bystanders, and the officer fired his weapon, killing the decedent. After the shooting it was discovered the decedent did in fact have a weapon on him.

In evaluating the qualified immunity issue, the court first noted that the officer's actions must be judged "during the shooting itself and the few moments directly proceeding it. *Id.* at 889. Evaluating the facts under this standard, the court concluded that the officer did not act reasonably in shooting the decedent and rejected the officer's defense of qualified immunity. In fact, the court posed the following hypothetical question: "[i]f an officer seeks to arrest someone for dealing crack cocaine and the *suspect resists, using his hands*, and then flees, may the officer shoot him? *Under the governing doctrine, the answer is clearly 'no.'*" *Id.* at 891. (emphasis added). It is important to note that although the decedent was running away from the officer at the time of the shooting, he was running toward several bystanders, which arguably could have given the officer cause to believe that the decedent posed a threat of a serious harm to the bystanders. Nevertheless, the court found that because the crimes the decedent was committing were not crimes of violence, the officers did not reasonably believe that the decedent was armed, the decedent only used his hands in the struggle, and the officer could have used alternatives short of deadly force, the officer was not entitled to

8

qualified immunity. This is precisely the case here. Mr. Horton was not committing a violent crime, he was only using his hands, he posed no threat to any bystanders, and Walker and Moore had easy alternatives available to them far short of using deadly force. Under this standard, it was well established in September 2013 that Officer Walker's conduct was plainly excessive, thus denying him the defense of qualified immunity.

Other cases cited in *Bouggess* demonstrate that Officer Walker's use of deadly force was plainly excessive. In *Sigley v. Kuhn,* No. 98-3977/99-3531, 2000 U.S. App. LEXIS 1465 (6th Cir. Jan. 31, 2000), a police officer arrested a driver for DUI, and after the driver passively resisted the officer, he then initiated physical aggression with the officer by tackling the officer and a struggle ensued. The officer then shot the driver claiming that, much like Officer Walker, he believed the driver was trying to grab his weapon. On these facts, the court upheld the district court's denial of summary judgment on the issue of qualified immunity, finding that the plaintiff had alleged sufficient facts to indicate that the officer was on notice that his use of deadly force was objectively unreasonable in the light of the driver's right to be free from unreasonable force.

In addition to the cases from this circuit and the case law cited above, other circuits' decisions, issued prior to September 2013, put Officer Walker on notice that his use of deadly force was unreasonable. For example, in *Baltimore v. City of Albany*, 183 F. App'x 891 (11th Cir. 2006) several officers tried to arrest a suspect they believed was violating a municipal open container ordinance, and they were surrounded by an angry

crowd while they tried to effectuate the arrest. The suspect tried to resist the arrest and a struggle ensued, and eventually one the officers used deadly force in smashing the suspect's head with a metal flashlight.

On these facts, the court held that the officer who struck the plaintiff was not entitled to qualified immunity. In so holding, it found that the district court correctly concluded that "'[c]onsidering that the arrest of Baltimore was based on the allegation that Plaintiff had violated a municipal ordinance and the incident escalated when Plaintiff tried to resist, the use of deadly force was unnecessary' under the 'clearly established law' of *Garner*." *Baltimore*, 183 F. App'x at 899.

In short, the clear trend in the case law that has developed since *Garner* establishes that a police officer may not use deadly force against an unarmed individual even where the individual resists arrest and a struggle ensues where there are alternatives available short of deadly force. This is precisely the case here; under an objective standard, Walker's conduct was "plainly excessive" under well-established precedent in force as of September 2013. As a result, summary judgment is simply not merited here: "When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Nelson v. Lutzou*, No. 16 C 6962, 2018 U.S. Dist. LEXIS 154397, at *10 (N.D. Ill. Sep. 11, 2018).

## **CONCLUSION**

By finding that Officer Walker is immune from liability for his use of deadly force against Mr. Horton, this Court is in effect establishing a rule that once a police officer draws his weapon, then any threats by the suspect or any altercation between the

10

officer and the suspect gives the officer license to shoot to kill without consequences. This unfortunate consequence from this Court's decision will not only send the completely wrong message to law enforcement authorities, it also does not square with the law. More than 25 years before Officer Walker shot and killed Marlon Horton, the United States Supreme Court held that "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Subsequent case law has fleshed out this doctrine in various fact patterns, but the fact that this identical scenario has not previously been dealt with on all fours does not change the fact that, based on the law then existing in September 2013, Officer Walker's conduct, in light of all the circumstances, was "plainly excessive."

Accordingly, for the foregoing reasons, Plaintiff respectfully requests that this Court vacate its order of summary judgment in favor of Officer Walker on the issue of qualified immunity and require him to stand trial for his actions.

Respectfully Submitted,


By: /s/ Josh M. Friedman
     Counsel for Plaintiff

Josh M. Friedman
Law Offices of Josh M. Friedman
53 W. Jackson Blvd., Suite 1028
Chicago, IL 60604
(312) 886-0277
josh@friedmanfirm.com

## **CERTIFICATE OF SERVICE**

      I, Josh Friedman, Counsel for Plaintiff, hereby certify that a copy of the foregoing **Motion to Reconsider** was served pursuant to the United States District Court for the Northern District of Illinois' Electronic Filing System on all counsel of record on this 29th day of October 2018.


      /s/ Josh M. Friedman
      Counsel for Plaintiff